BETSEY WILLIAMS *vs.* THE INHABITANTS OF BRAINTREE.

The notice and request to overseers of the poor, after which a town is made liable by the Rev. Stat. c. 46, § 18, to an individual for expense incurred by him in the support of a pauper, are conditions precedent to such liability. Such request must be an intelligible call on the overseers to take charge of the pauper at the expense of the town, and must be made by the individual himself claiming to recover, or by his agent or messenger.

·Where the plaintiff had been rendering assistance gratuitously in the family of her married daughter, as nurse and housekeeper, for some weeks, and continued her services therein, after all the members of the family had become ill of the small-pox, and stood in need of relief as paupers, but requested another person "to call on the overseers of the poor for more help, or a person to take care of said paupers instead of herself, for she could not stand it any longer;" in an action against the town to recover for services subsequently rendered, it was left to the jury, as a question of fact, to find whether the plaintiff intended, by such message, to give notice to the overseers, that she should thereafter render her services on the credit of the town, or only that the family needed further assistance in addition to her services, which she should continue to render without compensation; and the jury having returned their verdict for the defendants, it was held, that the plaintiff had no ground of exception to the course taken by the judge.

THIS was an action to recover for relief afforded to sundry paupers found residing within the town of Braintree, by way of nursing and other attendance, previous to the 27th of June, 1849, the date of the writ. The case was tried before *Hoar,* J., in the court of common pleas.

The plaintiff offered evidence, that one Hollis, his wife, and two children were, at the time named in the declaration, residing in Braintree, when they were all attacked with the small-pox, of which one of the children died; that during their sickness no person but the physician was in the habit of visiting the house where they lived; that, early in the sickness, Hollis applied to one of the overseers of the poor for assistance and for the aid of a physician; that the overseer sent to one doctor Wild to take charge of Hollis's family, ascertain their actual wants, and notify him, and he in behalf of the town would attend to it, and furnish such aid in the way of provisions as might be necessary; that Hollis informed the doctor that he wanted and needed a nurse to take care of his family, because he and his wife and the plaintiff were about worn out;

but the doctor did not communicate this request to the overseer, and did not recollect that it was made to him by Hollis; that soon after doctor Wild commenced visiting the family of Hollis, the latter made an arrangement with a neighbor, Hussey, by which Hollis left upon the wall near his house, from time to time, memoranda in writing of such articles of provisions as he was in need of, and Hussey took such memoranda to the overseer, who marked thereon such articles as he would furnish, and directed Hussey to get them on the credit of the town; and Hussey did so, and placed the goods near Hollis's house, where Hollis could get them.

It was also in evidence for the plaintiff, that she was at Hollis's house at the time of the commencement of the sickness, where she had for three weeks been nursing Mrs. Hollis, who was her daughter, and had just been confined; that the plaintiff continued with the family, rendering assistance as nurse and housekeeper during their sickness; that about the 26th of January, 1849, she requested Hussey to call upon the overseer above mentioned for more help, or a person to take care of the paupers instead of herself; for she could not stand it any longer; and there was evidence tending to show (but which was controverted by the defendants) that Hussey communicated this message to the overseer, who replied that he could not get any one to go there as a nurse. The plaintiff continued her services in Hollis's family for several weeks after sending the above notice to the overseer. The evidence, in regard to the condition of Hollis's family, and respecting the kind and extent of the plaintiff's services, as well as the notice given by her, was conflicting.

Upon this evidence, the plaintiff requested the judge to instruct the jury, that, if the overseers were notified of the situation of the paupers, and that they needed the relief which the plaintiff furnished, and were requested to furnish such relief, and refused; that the paupers did in fact need the relief, and the plaintiff, after such notice, furnished the relief at the request of the paupers; then the defendants were chargeable in this action; that the notice need not be given by the party furnishing the relief before the same was furnished; and

that the plaintiff was not bound to show affirmatively that she intended to charge the town when she rendered the services.

The presiding judge declined instructing the jury as requested, but instructed them, that as there was no evidence that the plaintiff knew of the application to doctor Wild, or that it was made by her authority, or that she in any manner altered her relation to the family in consequence of it, it was not such notice and request as was contemplated by the statute. In regard to the notice given through Hussey, the judge left it to the jury, as a question of fact, whether she intended by her message to the overseer, that she should thenceforth render her services upon the credit of the town, or whether she meant only that the family needed further assistance in addition to what she could render, intending still to furnish her own freely and without compensation. The judge also left it to the jury, upon the whole evidence, to say, whether the plaintiff thenceforward continued to work in the family as before, as a relative and friend, from motives of affection and good-will, intending all the time the services were rendered that they should be gratuitous, in which case she could not afterwards call on the town for payment; or whether she in truth bestowed her labor upon the family upon the credit of the town, and intending at the time to hold the town liable, so that she might be considered, and considered herself, as the nurse furnished to supply the neglect or omission of the defendants to do their duty in that respect, in which case she might recover.

The jury returned a verdict for the defendants, and the plaintiff filed exceptions.

*F. A. Kingsbury*, for the plaintiff, argued that the notice given was sufficient, citing *Worden* v. *Leyden*, 10 Pick. 24; *Underwood* v. *Scituate*, 7 Met. 214; *Smith* v. *Colerain*, 9 Met. 492; and that it was the duty of the overseers of the town to know and take care of the paupers, and that, therefore, no notice was necessary, citing *Farwell* v. *Smith*, 12 Pick. 83 *Hobart* v. *Hilliard*, 11 Pick. 143.

*J. J Clarke* and *N. L. White*, for the defendants

34 *

METCALF, J.   This action is brought on the Rev. Sts. *c.* 46, § 18, which provide that " every town shall be held to pay any expense which shall be necessarily incurred for the support of a pauper by any person who is not liable by law for his support, after notice and request made to the overseers of the said town, and until provision shall be made by them." The defendants do not deny, and we do not doubt, that the words "expense incurred," as used in this section, include such personal attendance on a pauper, and labor done for him, as are necessary for his support or relief.  But a town is not held to pay for support and relief furnished to a pauper by private individuals, unless it has first had an opportunity to support and relieve him, under the oversight and direction of its officers appointed to that duty.  The statute encourages a private individual to afford immediate relief to poor persons in distress, by giving him an action for indemnity against the town, provided the overseers of the poor, on notice and request by him, omit to furnish the relief.  But this notice and request are conditions precedent to the liability of the town.  And the request must be as explicit as the notice.  It must be an intelligible call on the overseers to take charge of the pauper, at the expense of the town.  See *Smith* v. *Inhabitants of Colerain,* 9 Met. 492; and *Walker* v. *Inhabitants of Southbridge,* 4 Cush. 199.

In the present case, the plaintiff was in the family of her son-in-law, nursing her daughter, before the smallpox reduced the family to such distress as required relief and support from the town.   She remained in the family, after such relief and support became necessary, and rendered assistance, as nurse and housekeeper, for several weeks, and afterwards requested another person (in the words of the exceptions) " to call on the overseers of the poor for more help, or a person to take care of said paupers, instead of herself, for she could not stand it any longer."   There was evidence tending to show that this person made such call on the overseers, in her behalf; but with no effect.  And the question is, whether this notice and request were such as entitle her, under the statute, to recover for her services afterwards rendered to the family.

It is quite clear that Hollis's request for a nurse, through the physician, gave the plaintiff no right of action for her subsequent services, even if that request was communicated to the overseers. The request must have been made by the plaintiff ierself, or by her agent or messenger. Otherwise, the overseers could not have had the legal means of knowing that she was administering relief for which she intended or had a right to require pay from the town.

As to the notice and request by the plaintiff herself, the judge left it to the jury, as a question of fact, whether the plaintiff intended, by her message to the overseers, that she should thereafter render her services upon the credit of the town, or whether she meant only that the family needed further assistance, in addition to what she could render, intending still to furnish her own labor without compensation.

We are of opinion that the plaintiff has no legal ground of exception to the course taken by the judge. The notice and request, under the circumstances of the case, were not clear and explicit. They did not necessarily import an intention to call on the town to pay for her services subsequently rendered. They were consistent with an intention to continue her labors gratuitously, to the extent of her ability, though she pressed for assistance. And the judge, instead of ruling, (as we are inclined to think he properly might,) that the notice and request were insufficient to give the plaintiff a right of action, referred it to the jury to decide what the plaintiff's meaning was, at the time. This was as favorable to the plaintiff as the law would possibly justify. And the jury have found that she continued, after said notice and request, to work in the family as before, intending that her services should be gratuitous.

*Exceptions overruled.*