Butterfield *v.* Haskins.

BUTTERFIELD *versus* HASKINS.

A devise of the *income* of land to the use of the devisee during his life, confers upon him a life-estate in the land.

A devise of the care and management of land and of the disposition of its income, during the life of the devisee, *for the benefit of another*, confers upon the devisee a life-estate, *in trust.*

If, under the will, the devisee take an estate in fee, subject to such life trust, his creditor, by a levy of his estate in remainder, can take no enjoyment of the income, until the death of the devisee.

An entry upon the land by the creditor to make such a levy, without his retaining or otherwise interfering with the possession, is not a trespass against the debtor.

WELLS, J. — The *locus in quo* was devised by Joseph Butterfield to the seven children, by name, of the plaintiff, and to his after-born children, by the wife, which he then had, who were to be entitled to equal shares of his estate with the other seven.

Seven children were born after the death of the testator, but four of them have died, and as we understand by the statement of facts, in infancy and without issue.

The children named took a vested, but qualified fee. According to the rules of conveyancing at common law, the devise to the after-born children would be void, because it was a conveyance of a freehold to commence *in futuro*, and to persons not *in esse*. But a different rule prevails in relation to devises, and after-born children may take in such cases by way of executory devise. The fee may be so limited as to open and let in their claims. *Dingley* v. *Dingley*, 5 Mass. 535 ; *Annable* v. *Patch*, 3 Pick. 360 ; 1 Fearne's Cont. Rem. 302 and 319 ; 6 Cruise's Dig. J. 38, chap. 17.

Another provision in the will is as follows : — "It is my intention and will that if any of the children of said John and Betsey, whether now born or hereafter to be born, shall die during their minority, *and* without any heir or heirs of his or her body or bodies, then the share or shares of such deceased child or children shall go to and be equally shared by all the brothers and sisters, of the whole blood of such deceased child or children."

By the principles applicable to executory devises, the shares of the four children born after the death of the testator, and who have since died, would pass to the survivors, and there being ten of them at that time, each one would take an undivided tenth part. Charles W. Butterfield was one of the ten surviving devisees, and took a tenth part of the estate. He died after he had arrived to the age of twenty-one years, leaving a wife but no children.

It is contended on the part of the plaintiff, that the word *and* in the clause of the will cited, should be changed into *or*, in order to carry into effect the intention of the testator. But if such change should be made, then if he had died during minority leaving children, the estate would go to his brothers and sisters, to the exclusion of his children. It cannot be supposed that the testator intended any such result. He has provided otherwise in plain and positive language, and *to* deprive a devisee of a share of the estate, such devisee must die during minority *and* without heir of his or her body. If the word *or* had been inserted in the will instead of *and*, a proper construction of it might have required a substitution of *and* instead of *or*. *Jackson* v. *Blanshaw*, 6 Johns. 54 ; *Sayward* v. *Sayward*, 7 Greenl. 210. There is nothing in the will from which it can be inferred, that the testator intended to put any other construction upon the clause under consideration, than its strict grammatical sense would imply. The plaintiff offered proof of his insolvency, and of the knowledge of it by the testator. But that proof creates no ambiguity in the will in any respect. If it were admitted, it could not have any effect upon the express terms of the will.

It might show a reason why the testator would not give his property to the plaintiff, upon the presumed repugnancy, which the testator might have to the appropriation of his property by the creditors of the plaintiff to the payment of his debts. The will itself indicates very clearly, that the testator did intend, to a certain extent, that the plaintiff should not take any interest under the will, which would be liable for his debts. But it must be presumed, that the testator understood the import of the language employed, and that in certain contingencies the plaintiff might acquire such interest. By the terms of the will, each devisee acquired an absolute estate in fee simple as soon as such devisee became twenty-one years of age, and upon dying without issue, and without making a disposition of it, the father would inherit the share of such deceased devisee. The testator might have been willing to dispose of his estate with a full knowledge of that contingency, and to leave to each devisee the entire control over it, after his or her arrival at the age of twenty-one years. Each child could then make a will, or permit the estate to follow the law of inheritance. The language used evinces such intention, and the testimony offered, if received, could not have the effect to show, that the testator did not so intend, and that he had made a mistake in using *and* instead of *or*. Upon the death of Charles W. the plaintiff, his father, inherited his share.

The defendant, after the death of Charles W., caused the interest of the plaintiff to be attached, and levies were made upon one-seventh part of the real estate devised to his children. By the will the plaintiff was to have the care and management of the estate during his life, for the benefit of his children, and was to "use and dispose of the income thereof for their support, education and comfort, according to his best skill and judgment." The plaintiff could not perform what was required of him by the will, unless he had possession of the estate and the control of it. If the income had been given to him for his own use during his life, he would have taken a life-estate. *Andrews* v. *Boyd*, 5 Greenl. 199;

4 Kent's Com. 536, and the cases there cited. But the care and management of the estate and the disposition of the income are given to him for the benefit of his children. It is therefore a trust estate during his life, he being the trustee, and holding it for his children.

The death of Charles W. did not authorize any change in the care and management of the estate.

The plaintiff's duty remained the same, he was to continue to take the income, not for himself, but for his children, during his life. And although he became the heir of Charles W. he could not appropriate the income of the share of the deceased devisee to himself. It appears to have been the intention of the testator, that the plaintiff should devote the income of the whole estate to the benefit of the children, and if he should retain to himself any part of it, that intention would be frustrated.

By the death of Charles W. the plaintiff became the owner in fee of his share, but as the plaintiff could not hold the profits for his own use, his creditor could not take them by a levy on that share, during the lifetime of the plaintiff. But the estate in remainder, after the termination of the trust estate, belonging to the plaintiff, by statute, chap. 94, sect. 1, might be taken in execution, but there could be no enjoyment of the rents and profits by the creditor, until after the death of the plaintiff.

The levies were made upon one-seventh part of the premises devised by the will, but the plaintiff was the owner of one-tenth part only, that being the share of Charles W. By the statute before cited, sect. 10, it is provided, that "all the debtor's interest in the premises shall pass by the levy, unless it be larger than the estate, mentioned in the appraisers' description." The debtor's interest in the premises was smaller than that mentioned in the appraisers' description, and it therefore passed by the levies.

The plaintiff had continued in possession of the land since the testator's death. The defendant was the owner of the judgment upon which the executions issued, and entered upon

the premises with the officer, and took possession under the levies from him, and this is the alleged trespass for which this suit is brought. He did not retain the possession or in any other manner interfere with it. Such an act would not make him a trespasser. When the statute authorizes a levy to be made upon a remainder, all the acts necessary to be done are embraced within the authority given, and an entry by the creditor for the purpose of taking a momentary seizin and possession, would not constitute a trespass. And this conclusion is in accordance with the seventeenth section of the statute.

According to the agreement of the parties, a nonsuit must be entered.

*Plaintiff nonsuit.*

*J. & M. L. Appleton*, for the plaintiff.
*A. W. Paine*, for the defendant.