# CASES DETERMINED

AT THE

## *August Term, 1885.*

Scott and another, Executors, etc., Respondents, vs. West, imp., Appellant.

Scott and another, Executors, etc., Appellants, vs. West and others, Respondents.

*April 3 — September 22, 1885.*

WILLS. *(1) Time for final settlement: Limitation. (2) Executors as trustees by implication: Title. (3, 4) Vesting of estates and legacies. (5) Case stated. (5:1) Rejection of false assumption. (5:2) Charge upon legatee for support of another. (5:3) Trust by implication. (5:4) Equitable conversion. (5:5) "Surviving:" Tenancy in common. (5:6) Possible failure of beneficiaries. (5:7, 8) Vesting of remainder: Opening to let in others. (5:9–15) Implied direction for accumulation of income for benefit of minors. (5:16) Gift of income: Time of accruing and of enjoyment. (5:17) "Net income:" Payment of expenses, etc.*

1. The estate of a testator is to be administered according to the will, even though a final settlement within the time limited by sec. 3850, R. S., is thereby rendered impossible.

2. Where a will expressly or by necessary implication creates certain trusts and imposes upon the executors the duties which are usually performed by trustees, they should administer the estate accordingly, and for that purpose will take such interest in the property as is requisite, although the will fails to name them specifically as trustees or bequeath the property to them in trust.

3. Estates, legal or equitable, given by will should be regarded as vesting immediately, unless an intention to the contrary is manifest.

4. Legacies payable at a future time certain to arrive and not subject to condition precedent are deemed *vested* when there is a person in

VOL. 63 — 34

| 63 | 529 |
|---|---|
| 74 | 205 |
| 63 | 529 |
| 77 | 313 |
| 63 | 529 |
| 79 | 541 |
| 63 | 529 |
| 80 | 515 |
| 63 | 529 |
| 83 | 625 |
| 63 | 529 |
| 87 | 458 |
| 63 | 529 |
| 88 | 134 |
| 63 | 529 |
| 90 | 78 |
| 90 | 314 |
| 63 | 529 |
| 93 | 51 |
| 63 | 529 |
| 100 | 638 |
| 63 | 529 |
| 98 | 201 |
| 63 | 529 |
| 103 | 458 |
| d103 | 515 |
| 103 | 639 |
| d103 | 642 |
| 104 | 614 |
| 63 | 529 |
| 113 | ²237 |
| 113 | ⁵237 |
| 113 | ⁵680 |
| 63 | 529 |
| 115 | ⁴135 |
| q116 | ¹533 |
| 63 | 529 |
| 117 | ⁷276 |
| j117 | ⁷277 |

being at the time of the testator's death capable of taking when the time arrives, although his interest is liable to be defeated altogether by his own death or to be diminished by future births.

5. By his will a testator, *first*, gave to his surviving daughters, Mary and Kate, three twenty-fourth parts each of the net income of his estate during their natural lives, and in case either or both of them should marry and have issue, gave to them, respectively, for the use and benefit of each of their children, during the natural lives of such children, one twenty-fourth part of the net income of the estate so long as either of said daughters should live; *second*, gave to his grandson Henry (son of a deceased daughter), from and after the time when he should attain the age of twenty-five years, one twenty-fourth part of the net income of the estate during his natural life, so long as either of said daughters should live; *third*, gave to the two daughters and the survivor of them, during their natural lives, his homestead, free of all taxes, expenses and repairs, and insurance, and to them jointly his household furniture, etc.; *fourth*, after the death of the said daughters gave all the residue and remainder of his property, real and personal, to his surviving grandchildren, to the legal issue of any deceased grandchild or grandchildren by way of representation, and to their heirs and assigns forever, in equal parts; *fifth*, directed the executors to pay all his debts, and during the lives of his daughters to pay all taxes on the homestead and household furniture, etc., to keep the same insured and in good repair without expense to the daughters, and in case of the destruction of the homestead by fire to rebuild it without expense to the daughters; *sixth*, directed his estate to be prudently managed, the buildings, etc., to be kept in repair, and authorized the executors in their discretion to purchase other real estate and make improvements, with any moneys coming into their hands not otherwise disposed of; *seventh*, directed his daughters to pay quarterly from the income they should derive from his estate, to his sister, a sufficient sum for her comfortable support. The daughters were appointed executors. The clause referring to his daughters as though both were unmarried was copied by mistake from a former will, and, in fact, at the time of the execution of the will, Mary was married and had two children. Before the testator's death a third child was born to her, and Kate was married; and after his death a child was born to Kate. All of the grandchildren were minors at the time of his death, the oldest, Henry, being then less than ten years of age. The will leaves almost the entire *corpus* of the estate, and (unless a large number of grandchildren shall hereafter be born) a very

Scott and another, Ex'rs, etc. vs. West and others.

large share of the net income, undisposed of, so long as either of the daughters shall live.  *Held:*

(1) The intention manifested in the will to provide for all his grandchildren will not be frustrated by the false assumption or inference respecting the marriage of Mary.

(2) The direction to the daughters to pay to the testator's sister a sum sufficient for her support, is a charge upon them personally, to be paid out of the shares of the net income of the estate given to them by the first clause of the will.

(3) By necessary implication from the duties imposed upon the executors, a trust is created, and the legal title to the whole estate, real as well as personal, is vested in them, during the lives of the daughters and the survivor of them, with rights commensurate with the duties imposed by the trust.

(4) Real estate purchased by the executors with the proceeds of the personal estate must thenceforth be treated as realty.

(5) After the death of the daughters the residue of the estate is given by the fourth clause of the will to such of the testator's grandchildren (whether born before or after his death), and to such of the legal issue of any deceased grandchild or grandchildren, as shall survive both of the daughters; and such survivors will take as tenants in common.

(6) The possibility that no grandchild and no legal issue of any deceased grandchild will survive both daughters does not invalidate that clause of the will.  Sec. 2050, R. S.

(7) The words "after the death of my daughters" in said fourth clause refer to the time when the survivors designated will come into complete enjoyment and possession of the residue of the estate, and not to the time when the gift takes effect in point of right.

(8) By that clause, therefore, each grandchild living at the death of the testator took at once, and each after-born grandchild takes at its birth, a *vested remainder* in a fractional share of the realty, and a corresponding vested interest in the personal property,—such remainder opening to let in after-born grandchildren and the issue of deceased grandchildren, by way of representation, and being liable to be divested as to any grandchild dying without issue; and such interest in the personalty being liable to be divested in like manner and to be diminished by future births.

(9) The failure to dispose of a large portion of the net income during the lives of the daughters, and the disposition of "all the residue and remainder" of the estate upon their death, is, by necessary implication, a direction to accumulate such undisposed of portion of the net income.

(10) Such direction so far as it relates to the income from personalty is not prohibited by our statute and is valid.

(11) Such direction for accumulation of rents and profits being made solely for the benefit of the minor grandchildren, is not void because not made to minors eo nomine, nor because incidentally the accumulation may increase the net income of the estate and so the shares of such income to be paid to the daughters.

(12) Nor is such direction void because all the minors for whose benefit it was made were not in being at the death of the testator, when the estate was created out of which the rents and profits to be accumulated were to arise; for the ultimate right to the accumulation vested at that time in the grandchildren then living, as the persons entitled to the expectant estate, in like manner as such expectant estate vested in them.

(13) But such direction for the accumulation of rents and profits is void so far as it includes any time beyond the minority of the persons for whose benefit it was made, respectively. As each of such persons becomes of age, therefore, his fractional share of such accumulation will be paid to him, and thenceforward he will take his share as it accrues, and the accumulation will continue only as to such of said persons as are still minors.

(14) After-born grandchildren will share in such accumulations only of the rents and profits as accrue after their birth.

(15) The grandson Henry will share in the accumulation of the undisposed of portion of the net income equally with the other grandchildren.

(16) The words "from and after the time when he shall attain the age of twenty-five years" in the second clause of the will, refer to the time when Henry is to come into the complete possession and enjoyment of the share of the income there given to him, and not to the time when such share begins to accrue.

(17) All expenses and disbursements in the administration of the estate, including taxes, insurance, etc., are to be paid out of the gross income of the whole estate, and the balance remaining each year will constitute the "net income."

APPEAL from the County Court of *Milwaukee* County. The following statement of the facts was prepared by Mr. Justice CASSODAY:

"March 17, 1883, Napoleon B. Caswell died at his residence in Milwaukee, leaving a will, executed July 16, 1880, which was proved and admitted to probate, July 5, 1883,

and which, omitting immaterial parts, was as follows, to wit:

" '*First.* I give and bequeath to my daughters, *Mary* and *Kate*, three twenty-fourth parts each of the net income of my estate during their natural · lives; and in case either or both of my said daughters shall marry and have issue, I give and bequeath to them, respectively, for the use and benefit of each of their children during the natural lives of such children, one twenty-fourth part of the net income of my estate, so long as either of my said daughters shall live.

" '*Second.* I give and bequeath to my grandson, *Henry T. West, Jr.*, the child of my son-in-law, Henry T. West, and my daughter Helen S., now deceased, from and after the time when he shall attain the age of twenty-five years, one twenty-fourth part of the net income of my estate during his natural life, so long as either of my said daughters shall live.

" '*Third.* I give, devise, and bequeath to my said daughters, *Mary* and *Kate*, and to the survivor of them, during their natural lives, the dwelling-house which I now occupy, and all that piece of land upon which it stands [constituting my homestead described], free of taxes, expenses and repairs, and insurance, and to them jointly all my household goods, furniture, books, pictures, plate, and ornaments.

" '*Fourth.* After the death of my said daughters, *Mary* and *Kate*, I give, devise, and bequeath all the residue and remainder of my property, real and personal, to my surviving grandchildren, and to the legal issue of any deceased grandchild or grandchildren, by way of representation of such deceased grandchild or grandchildren, and to their heirs and assigns, forever, in equal parts.

" '*Fifth.* I order and direct that my executors pay all my just debts, including mortgages on my real estate, if any, with as little delay as may be after my decease, and that

during the lives of my said daughters they pay the taxes on the homestead property as aforesaid, and on the household goods, furniture, pictures, books, plate, and ornaments bequeathed to my said daughters, and keep the same insured and in good repair, without expense to my daughters or either of them; and in the case of the destruction of the dwelling-house on said homestead property by fire, I direct my executors to rebuild the same without expense to my daughters, whether the insurance moneys be sufficient for that purpose or not.

"'*Sixth.* It is my wish that my estate should be prudently managed in every respect; that the buildings and other improvements on real estate should be kept in good condition as to repairs; and if, in the opinion of my executors, the interests of all parties concerned would be promoted by purchasing other real estate, or making improvements on my real estate which may be improved, I authorize the use for that purpose of any moneys that may come into their hands not otherwise disposed of by this will.

"'*Seventh.* My daughters, *Mary* and *Kate*, are required to pay quarterly, from the net income they derive from my estate, to my sister, Eveline Caswell, a sum sufficient for her comfortable support, as long as she shall live.

"'*Eighth.* I appoint my said daughters, *Mary* and *Kate*, the executors of this my last will, and request that they be permitted to act as such without giving security.

"'*Lastly.* I hereby revoke all former wills by me made.

"'In witness whereof, I have hereunto set my hand and seal this 16th day of July, A. D. 1880.

"'NAPOLEON B. CASWELL.'    [Seal.]

"In May, 1884, the plaintiffs, as executors, commenced this action in the county court against their respective children, and the child of a deceased sister, all named in the will, for a construction thereof. The defendants are all

infants and grandchildren of the testator.  *Henry T. West, Jr.*, answers by his guardian *ad litem*, William W. Wight; and the other defendants, by their guardian *ad litem*, William P. Lynde.

"On the trial it was either admitted by the parties or found by the court that the deceased had been divorced from his wife just prior to October 19, 1870; that the testator and his said wife had, during their marriage, three daughters, all living at the time of such divorce, to wit, Helen S., *Mary E.*, and *Kate F.;* that, on the day and year last named, the testator conveyed to his divorced wife certain lands and property described, upon certain express trusts, for the benefit of their said daughters, to be conveyed by her to them, or the survivors or survivor of them in equal shares, or to the lineal heirs of such daughters, respectively, on January 28, 1884, when the youngest of said daughters should attain the age of twenty-one years; that Helen S. married Henry T. West, July 11, 1872, and as the fruit of that marriage had the West grandson named as defendant, born April 15, 1873, and that on May 3, 1873, Helen S. died; that *Mary E.*, when twenty-three years of age, married Frederick M. Scott, October 31, 1877, and as the fruit of that marriage had the three Scott children named as defendants, born, respectively, September 4, 1878, March 25, 1880, and November 9, 1881; that *Kate F.* married Oliver C. Fuller, May 25, 1881, and as the fruit of that marriage had the Fuller grandchild named as defendant, born July 23, 1883; that *Kate F.* became twenty-one years of age, January 28, 1884; that on that day the divorced grandmother conveyed to the defendant *Henry T. West, Jr.*, as the only child and heir at law of Helen S., and in execution of the deed of trust to her, the undivided one-sixth part of the real estate so conveyed to her in trust by the testator, valued at $15,000, and which had brought a net income of from $500 to $600 per annum; that the testator's

relations to *Henry T. West, Jr.*, at and prior to the date of the will, were friendly and affectionate, and he had prior to that time expressed the intention of providing liberally for him; that the will had been prepared by the testator himself, and in so doing he had copied in part from a former will, and this is why the testator speaks of his two surviving daughters as unmarried, when in fact *Mary E.* had been married nearly three years, and had two children; that the dwelling-house and homestead were worth $6,500, and could be rebuilt for that then, or at any time within fifteen years at a cost not exceeding $8,000; that it needed repairs to the extent of $600, and would require for repairs, on an average, an expenditure of $150, and an annual expenditure for insurance of $25; that the annual expenditure for taxes and insurance of the homestead property, real and personal, bequeathed to *Mary E.* and *Kate F.* had for several years been less than $300 a year, and that the whole value thereof did not exceed $10,000; that at the time of the testator's death he was seized and possessed of real estate worth $177,000, and personal property valued at $151,707.05, exclusive of household furniture, plate, etc., valued at $859.85, given to the daughters by the third paragraph of the will; that the net income of the estate, at and since the death of the testator, had been about $20,000 per annum; that the total amount and value of the entire estate at the time of the hearing was about $350,000; that the testator was nearly sixty-nine years old at the time of his death, but up to the time of making his will had seen neither of his two Scott grandchildren; that his daughters, *Mrs. Scott* and *Mrs. Fuller* were, at the time of the hearing, in good physical condition and health, and members of a long-lived family."

As conclusions of law the court found that, according to the terms and the true intent and meaning of the will,

"1. The gift and bequest made, in and by the first paragraph of said will, by said testator to his daughters, *Mary*

and *Kate*, respectively, of one twenty-fourth part of the net income of his estate for the use and benefit of each of their children, applies to all of the children of the said *Mary E. Scott*, including those born prior to the date of said will; and the gift and bequest of income for the use and benefit of each of the children of the said *Mary E.* and *Kate F.* respectively, gives and disposes of a share of such net income arising and accruing from the date of the testator's death, for the use and benefit of each child of the said daughter *Mary*, living at that date, and gives and disposes of, for the use and benefit of each child of said *Mary* and *Kate* respectively, born after the death of said testator, a share of such net income arising and accruing only from and after the date of the birth of such child.

"2. Such gifts and bequests to said daughters for the use and benefit of their respective children, do not cease with the death of one of said daughters, as to her children, but they continue until the death of both of said daughters of the testator named in said will.

"3. The one twenty-fourth part of the net income of the testator's estate, given and bequeathed to his grandson *Henry T. West, Jr.*, refers to and includes only such income of the estate as shall arise and accrue from and after the time when said *Henry T. West, Jr.*, shall attain the age of twenty-five years, and does not include any part of the income of said estate accruing before that time.

"4. The legal title to the entire estate, real and personal, of which the said testator died seized and possessed, except the property described in the third paragraph of his said will, is vested by said will in the executors therein named, and the survivor of them, for their respective lives, in trust to manage and control the same, to keep the buildings and improvements on the real estate in repair, to make improvements on the unimproved real estate, to purchase additional real estate, to ascertain, collect and pay over the

shares of net income disposed of by said will, according to the terms thereof, and to and for all the purposes indicated and expressed in and by said will.

" 5. The said executors are authorized by said will to invest any moneys coming into their hands as such, and not otherwise disposed of by the will, including the capital as well as income of the personal estate left by the testator at his death, in the purchase and improvement of real estate.

" 6. The title to all such real estate which may be so purchased by said executors, shall be taken and held by them, and the survivor of them, as executors of said will, and upon the trusts in said will, and such real estate so purchased shall be regarded and dealt with by said executors, in the management and administration of said estate by them as trustees under said will, as personal estate, and the income thereof shall be deemed and treated by said executors and accounted for by them, as to all intents and purposes the income of personal estate.

" 7. The said executors are authorized by said will, in the exercise of their discretion in the prudent management of said estate, to make from time to time such alterations in the character of the improvements upon the testator's real estate, as they shall deem necessary or wise in view of the best interests of all parties concerned therein.

" 8. In order to carry into effect the provisions of said will, according to the true meaning and intent thereof, the said executors should be required, in the management of said estate and in the execution of the trusts therein imposed upon them, to keep their accounts of expenditures on account of real estate and of income derived therefrom, separate and distinct from their accounts of expenditures and income on account of personal estate — including in the personal estate real property purchased by them, as provided in and by said will; — and to show in and by their annual accounts as executors and trustees, what portion of

the income of the estate of said testator is derived from the real estate, and what from the personal estate, respectively.

" 9. All expenses and disbursements in and about the administration of said estate, and the execution of the trusts imposed upon the executors by and under said will, including the payment of all taxes, premiums for insurance, and the cost of ordinary repairs, and the payment of the specific shares of the net income of the whole estate which are bequeathed by the said will, ought, in order to carry into effect the intentions of the testator, to be paid and discharged exclusively with and out of the income of the real estate of which the said testator died seized, so far as such income will pay the same; and only in case the income of such real estate shall be insufficient therefor, and then only to the extent of such deficiency, ought any part of such expenses or disbursements to be paid out of the income of the personal estate in the hands of said executors.

" 10. The whole income of the personal estate in the hands of said executors, or so much thereof as shall not be required to cover and pay such deficiency of the income of the real estate, should, in order to carry out the provisions of said will, be loaned out or invested from time to time by said executors, in the execution of their trust, and kept so loaned or invested, so as to render the same productive of further income, and the same and the proceeds, income, and accumulations thereof should be kept and retained in their possession and control as such executors and trustees during their natural lives, for the benefit of those persons who, by the terms of said will, are, or will be, entitled to the whole estate, including said proceeds, income, and accumulations, after the death of both of said executors,— daughters of the said testator.

" 11. In case there shall, in any year, be a surplus of the net income of the real estate of said testator, remaining in

the hands of the said executors, after paying in full from such income all the expenses and disbursements chargeable thereon for such year as aforesaid, such surplus income should be held, retained, invested, employed, and dealt with by the said executors, in like manner as they are required to hold, invest, employ, and deal with the income of the personal estate, in the execution of their trust as executors.

" 12. By the terms of the seventh paragraph of the said will, the said daughters of the testator, *Mary* and *Kate*, are personally charged with the support of Eveline Caswell, sister of the testator, the expenses of such support to be paid by them out of the shares of the net income of the testator's estate given to them in and by his said will.

"13. The costs of this action should be paid by the said executors out of the estate of the said testator."

From the judgment entered accordingly separate appeals were taken by the defendant *Henry T. West, Jr.*, and by the plaintiffs, as executors.

*Joshua Stark*, for the executors:

1. The intention of the testator, gathered from the terms of the will itself, must govern in its construction. 1 Redf. on Wills, 432, 433; *Estate of Eastman*, 24 Wis. 560; *Wheeler v. Hartshorn*, 40 id. 99; *Chandler's Appeal: Estate of Mc-Coy*, 34 id. 506, 511. Evidence of extrinsic facts is admissible only to enable the court to determine the true meaning of the words used; not to correct errors or supply omissions. *Hopkins v. Holt*, 9 Wis. 230; *Sherwood v. Sherwood*, 45 id. 357; *Boisseau v. Aldridges*, 5 Leigh, 222; *S. C.* 27 Am. Dec. 601. In the absence of a clear expression of intent the court will not presume the testator to have intended to dispose of his estate in a manner prohibited by law. *Du Bois v. Ray*, 35 N. Y. 165; *Post v. Hover*, 33 id. 601.

2. Real estate purchased by the executors under the authority given in the sixth paragraph of the will becomes realty to all intents and purposes from the time of such

purchase, and stands on the same footing as other realty left by the testator. Had the will directed the investment of personalty in real estate, by positive and mandatory terms, such personalty would, by the doctrine of equitable conversion, have been deemed and treated as realty from the time of the testator's death. *Chandler's Appeal*, 34 Wis. 511; *Dodge v. Williams*, 46 id. 97; *Gould v. Taylor Orphan Asylum*, id. 106; 2 Redf. on Wills, 125; 3 id. 139; 2 Jarman on Wills, 170; *Janes v. Throckmorton*, 57 Cal. 382; *Nagle's Appeal*, 13 Pa. St. 260; Story's Eq. Jur. sec. 790; *Chess's Appeal*, 87 Pa. St. 362. But when the change from personal to real property is made by an authority like that here given, the conversion dates from the change in form. *White v. Howard*, 46 N. Y. 144, 162; *Harris v. Clark*, 7 id. 261; *Cook v. Cook*, 20 N. J. Eq. 375; *Page's Estate*, 75 Pa. St. 87; *Haggart v. Roud*, 6 B. Mon. 247; *Christler's Ex'r v. Meddis*, id. 35; 1 Jarman on Wills, 538, 539; 2 id. 184, 194.

3. If the testator intended that the income of the real estate, not expressly disposed of by the will, should be accumulated for the benefit of the residuary devisees, such intention must fail because in violation of secs. 2061, 2062, R. S. The fact that the statutes do not prohibit the accumulation of the income of personalty becomes quite unimportant in view of the fact that the will contemplates and authorizes the conversion of the personal into real estate. If an accumulation was intended, it was evidently to commence upon the death of the testator. The supposed provision for accumulation is therefore void because (1) it was not made for the benefit of *one or more minors then in being*, but for the benefit of a class including persons not yet born; (2) it is not to terminate at the expiration of the minority of those benefited. It is impossible to bring this provision within the terms of the statute. *Harris v. Clark*, 7 N. Y. 242; *Jennings v. Jennings*, id. 547; *Kilpatrick v.*

*Johnson*, 15 id. 322; *Pray v. Hegeman*, 92 id. 508; *Haxtun v. Corse*, 2 Barb. Ch. 506; *Vail v. Vail*, 4 Paige, 317; *Hawley v. James*, 5 id. 318; *S. C.* 16 Wend. 114, 147, 183; *Despard v. Churchill*, 53 N. Y. 192; *Scott v. Monell*, 1 Redf. 431; *Thompson v. Clendening*, 1 Sandf. Ch. 387; *Gott v. Cook*, 7 Paige, 521.

4. An implied direction for the accumulation of rents and profits is no less within the prohibition of the statute than an express direction. 3 Jarman on Wills, 586; Lewin on Trustees (ed. 1879), 82, 83; *McDonald v. Bryce*, 2 Keen, 276; *Morgan v. Morgan*, 4 De Gex & Sm. 170; *Tench v. Cheese*, 6 De Gex, M. & G. 453; *Evans v. Hellier*, 5 Clark & Fin. 114; *Macpherson v. Stewart*, 28 L. J. Ch. 177; *Haxtun v. Corse*, 2 Barb. Ch. 506; *Vail v. Vail*, 4 Paige, 317; *Hawley v. James*, 5 id. 318, 480–482.

5. The judgment of the court below overrides the settled doctrine that the personal estate of a testator is primarily chargeable with the payment of debts, legacies, annuities, and other testamentary burdens, unless the intent to exonerate the personalty and charge such burden upon the real estate is clearly apparent from the terms of the will. *Lupton v. Lupton*, 2 Johns. Ch. 614; *Harris v. Fly*, 7 Paige, 421; *Reynolds v. Reynolds' Ex'r*, 16 N. Y. 257; 3 Jarman on Wills, 451, note, 461, note; *Knotts v. Bailey*, 54 Miss. 235; *S. C.* 28 Am. Rep. 348; *Allen v. Allen*, 3 Wall. Jr. (C. C.), 289.

6. The assumption that the testator intended an accumulation of part of the income of his estate is unwarranted. Such intention is not to be found in the will and cannot fairly be implied from its terms or the disposition made of the estate. Mere silence as to the disposition of a large part of the income is not sufficient evidence of such intent, for the will is equally silent as to the disposition of the body of the estate during the lives of the daughters. It creates no trust, and vests in the executors no title or interest in the property, and charges them with no duties as

to the realty requiring an estate in them. The will must stand as made, and if it fails to dispose of estate or income the law will justly dispose of it.

7. The surplus income of the estate during the lives of the daughters belongs, therefore, to the heirs at law, as incident to the life estate which the will has failed to dispose of. Although it will not be presumed that a testator intended to leave a part of his estate or any interest therein undisposed of, yet, on the other hand, it is a well-known maxim that the heir at law can only be disinherited by *express devise or by necessary implication.* Necessary implication is that which leaves no room to doubt; and to be effective the implication must be necessary. 2 Jarman on Wills, 103n, 107, 112; *Roosevelt v. Fulton,* 7 Cow. 71; *Jackson v. Schauber,* id. 187; *Van Kleeck v. Dutch Ref. Ch.* 6 Paige, 600; *Bender v. Dietrick,* 7 Watts & S. 284; *Rupp v. Eberly,* 79 Pa. St. 141; *Boisseau v. Aldridges,* 5 Leigh, 222; *S. .C.* 27 Am. Dec. 590; *Scott v. Guernsey,* 48 N. Y. 106; *Wilkinson v. Adam,* 1 Ves. &. B. 466; *Brummel v. Prothero,* 3 Ves. Jr. 113; *Parker v. Tootal,* 11 H. L. Cas. 143, 161; *Post v. Hover,* 33 N. Y. 593; *Deering v. Adams,* 37 Me. 264; *Grout v. Hapgood,* 13 Pick. 159; *Chinn v. Respass,* 1 Mon. 25; *Kelly v. Stinson,* 8 Blackf. 387; *Ridgely v. Bond,* 18 Md. 433, 448. Real estate must be given to some one else, in order to disinherit the heirs at law. *Rubottom v. Morrow,* 24 Ind. 204; *Haxtun v. Corse,* 2 Barb. Ch. 506.

8. It may be urged that the devise to grandchildren, etc., after the death of the daughters, creates a vested interest in the residuary devisees, and that if the life estate is not otherwise devised, and no trustee is provided to hold the land during the lives of the daughters, such residuary devisees are entitled to claim the immediate possession in virtue of such residuary devise, and to enjoy the surplus income of the estate as incident to such possession, until the time for the final distribution of the body of the estate. To this

it is answered that if the will creates a trust term in the executors for the lives of the testator's daughters, or otherwise disposes of the precedent life estate, the interest of the surviving grandchildren, etc., under the residuary devise, is a contingent remainder; or if, as the executors claim, the life estate is mainly undisposed of, and no trust estate is created, the devise under that clause must be deemed executory and contingent. In either case the testator has taken care that no estate shall vest in his grandchildren or their issue until after the decease of his daughters. "Where the estate is to vest upon an uncertain event, *or in a person not definitely ascertained*, the executory devise is contingent and partakes of the nature of a contingent remainder." Tiedeman on R. P. sec. 531. Here the gift is to a class, whose members cannot be determined or known until after the death of two persons named. If the devise were vested in grandchildren living at the time of the testator's death, such vested interest would pass to their heirs at law upon their death; but here such heirs are excluded and the devise is to their issue only, who take as devisees and not as heirs. See *DeLassus v. Gatewood*, 71 Mo. 373; *Emison v. Whittlesey*, 55 id. 254; *Pemberton v. Parke*, 5 Binney, 611; *Sinton v. Boyd*, 19 Ohio St. 30; *Smith v. Block*, 29 id. 488; *Olney v. Hull*, 21 Pick. 311; *Kuhn v. Webster*, 12 Gray, 3; *Richardson v. Wheatland*, 7 Met. 169; *Thomson v. Ludington*, 104 Mass. 193; *Brown v. Williams*, 5 R. I. 309; *Bailey v. Hoppin*, 12 id. 560; *In re Ryder*, 11 Paige, 185; *Vail v. Vail*, 4 id. 317; *Austin v. Bristol*, 40 Conn. 120; *Goodwin v. Goodwin*, 48 Ind. 585; *Augustus v. Seabolt*, 3 Met. (Ky.), 155; *Blatchford v. Newbery*, 99 Ill. 11; *Womack v. Smith*, 11 Humph. 483; *Tucker v. Stites*, 39 Miss. 196; *Robertson v. Wilson*, 38 N. H. 48; *Slack v. Bird*, 23 N. J. Eq. 238; *Ridgeway v. Underwood*, 67 Ill. 419. The intention of the testator that no interest whatever in the body of his estate should vest in any grandchild until after the decease

of both his daughters, being clearly apparent in his will, effect must be given to it whether it result in intestacy or not. 3 Jarman on Wills, 436.

9. The will cannot be construed as vesting the estate for the lives of the daughters in the executors as trustees. There is no express devise to the executors, and no trust is created in them by express terms. If they take any estate it must be raised by necessary implication. To create such an estate it must appear that the will directs something to be done by the executors, the doing of which necessarily requires that they hold and possess the estate. And in such a case the trustees take only that quantity of interest which the exigencies of the trust require. *Nicoll v. Walworth*, 4 Denio, 388; *Webster v. Cooper*, 14 How. 499; *Manice v. Manice*, 43 N. Y. 303; 3 Jarman on Wills, 70, 79; *Upham v. Varney*, 15 N. H. 462; *Ellis v. Fisher*, 3 Sneed (Tenn.), 231; *Matter of De Kay*, 4 Paige, 404; *Inches v. Hill*, 106 Mass. 578; *Post v. Hover*, 33 N. Y. 593; *Tucker v. Tucker*, 5 id. 408; *Rock River Paper Co. v. Fisk*, 47 Mich. 212; *Barnes v. Hathaway*, 66 Barb. 452. And see *Craig v. Craig*, 3 Barb. Ch. 76, 94; *Brewster v. Striker*, 2 N. Y. 19; *Leggett v. Perkins*, id. 296, 395; *Tobias v. Ketchum*, 32 id. 328; *Vail v. Vail*, 4 Paige, 317; *Walker v. Whiting*, 23 Pick. 313; Perry on Trusts, sec. 121; *Deering v. Adams*, 37 Me. 264; *Pearce v. Savage*, 45 id. 90; *Mather v. Mather*, 103 Ill. 607. This will neither directs nor authorizes the executors to hold, possess, lease, collect rents, pay over income, or do any specific act in respect to the estate, except to convert personalty into realty, and to pay the expense of taxes, insurance, repairs, and reconstruction of the homestead. It is impossible to find authority in it for holding any part of the real estate, original or newly purchased, or any more of the personal estate than may be required to carry the charge for the homestead, to be vested in the executors in trust for any purpose whatever.

10. The same person cannot act both as trustee and *cestui que trust* in respect to the same property. *Bundy v. Bundy*, 38 N. Y. 410. Where the legal and equitable titles are united in the same person, the latter is merged in the former. *James v. Johnson*, 6 Johns. Ch. 417; 1 Perry on Trusts, sec. 347; *Nicholson v. Halsey*, 1 Johns. Ch. 422; *Mason v. Mason's Ex'r*, 2 Sandf. Ch. 477, 525; *Hopkinson v. Dumas*, 42 N. H. 306, 307. A gift or devise of the income of real or personal property is in effect a gift or devise of the property itself. R. S. secs. 2060, 2075; 4 Kent's Comm. 536, note; *Earl v. Grim*, 1 Johns. Ch. 494; *Monarque v. Monarque*, 80 N. Y. 321; *France's Estate*, 75 Pa. St. 220; *Andrews v. Boyd*, 5 Me. 199; *Mather v. Mather*, 103 Ill. 607; *Mandlebaum v. McDonnell*, 29 Mich. 78; *Cooper v. Pogue*, 92 Pa. St. 254; 2 Washb. on R. P. (3d ed.), 450; 2 Jarman on Wills, 534; *Bailey v. Bailey*, 97 N. Y. 460. Giving effect to these rules of law, the will vests in each of the daughters, *Mary* and *Kate*, personally and not as executrix, a vested life interest in the estate, proportioned to the shares of income devised and bequeathed to her. The gift of the shares of the income is direct to the daughters, for themselves and their children, and to the grandson, *Henry T. West, Jr.;* and to the extent of the gift they may claim to hold the life estate by direct devise and without the intervention of a trust. As to the remaining estate and income during the lives of the daughters, Mr. Caswell died intestate, and they descend to his heirs at law.

11. The statutes expressly provide for contingent estates vesting at a future time without the intervention of a precedent estate. R. S. secs. 2048, 2034, 2037.

12. The claim that the executors are to hold the estate upon an implied trust derives no support from the powers conferred by statute on executors. Under sec. 3850, R. S., the functions of executors, as such, cease at the end of six years after the granting of letters testamentary, and from

that time they must hold the real estate of the testator, if at all, as devisees, in trust or otherwise. *In re Estate of Pierce*, 56 Wis. 560.

13. Sec. 2064, R. S., applies only where there is a precedent estate in trust, and a direction is given to accumulate rents and profits, which proves invalid. But where the intermediate estate descends to the heirs at law, because not disposed of by the will, they, being in rightful possession of the property, are entitled to the rents and profits as incident to such possession. *In re Estate of Pierce*, 56 Wis. 560; *Vail v. Vail*, 4 Paige, 317.

14. Under the second paragraph of the will *Henry T. West, Jr.*, is entitled to claim a share of the net income accruing from the time of his attaining the age of twenty-five, and nothing more. If the testator had intended that a share of the income from the time of his death should be set apart for said *Henry*, to be paid over to him when he became twenty-five years old, some plain declaration of such intent would have been made, and some direction given as to the care and preservation of such share.

*William W. Wight*, guardian *ad litem* of *Henry T. West, Jr.*, contended that the share of the income given to his ward by the second paragraph of the will began to accrue from the death of the testator. The meaning of the words "from and after" in this connection receives some light from the language of the courts in construing similar words in the conveyance of a remainder. *Doe v. Considine*, 6 Wall. 458, 475; *Rives v. Frizzle*, 8 Ired. Eq. 237; *Moore v. Lyons*, 25 Wend. 119, 144; *Mackel v. Winter*, 3 Ves. Jr. 543. These decisions, though founded on different states of facts and not ruling this case, establish the principle that if time is to be annexed to the gift itself, express language should so declare. The clause is capable of a construction which supplies the words *to be paid* or *to be enjoyed* from and after, etc. The words *during his natural life* indicate the period

of the endurance of the bequest, the exact significance of the same words in the first paragraph. The will speaks from the testator's death. *DeLassus v. Gatewood,* 71 Mo. 371. That time was the beginning of *during.* If *during* did not begin until the lad was twenty-five, then in case both daughters died during the intervening eighteen years (an occurrence which must have been considered probable by the testator) the second paragraph would give him nothing at all. If the testator intended to cut this boy off entirely for eighteen years, he must say so in plain, unequivocal language. It would be unnatural for him to do so, and if the language is doubtful, the court will adopt a construction which will save to the boy this intermediate income. *Moore v. Lyons,* 25 Wend. 119, 125; *Johnson v. Valentine,* 4 Sandf. 36. And the surrounding circumstances show reasons for not excluding the boy, who was apparently the only grandchild whom the testator had in mind as in existence when the will was drawn, and for whom he had the most kindly feeling.

He also urged substantially the same construction of the other provisions of the will as that contended for by counsel for the executors, citing additional cases. To the point that the *implied* direction for the accumulation of rents and profits is void: *Morgan v. Morgan,* 15 Jur. 319; *Mathews v. Keble,* L. R. 3 Ch. App. 691; *Lovett v. Gillender,* 35 N. Y. 617; *McKee's Appeal,* 96 Pa. St. 277; *Alfred v. Marks,* 49 Conn. 473. To the point that a devise of the rents and profits of real estate not otherwise specifically disposed of is a devise of the realty from which they issue: *Okeden v. Okeden,* 1 Atk. 550; *Hall v. Carter,* 2 id. 358; *Mills v. Banks,* 3 P. Wms. 7; *South v. Alleine,* 1 Salk. 228; *Allan v. Backhouse,* 2 Vesey & B. 65; *Reed v. Reed,* 9 Mass. 372; *Craig v. Craig,* 3 Barb. Ch. 77; *Miller v. Casselberry,* 47 Pa. St. 376; *Butterfield v. Haskins,* 33 Me. 392; *Schryer's Estate,* 2 Brewst. 526. To the point that legacies, debts,

and charges are primarily payable out of the personal estate: *Shulters v. Johnson*, 38 Barb. 80; *Myers v. Eddy*, 47 id. 263; *Hoes v. Van Hosen*, 1 N. Y. 120; *Roman Catholic Church v. Wachter*, 42 Barb. 43; *Kinnier v. Rogers*, 42 N. Y. 531; *Hanna's Appeal*, 31 Pa. St. 53. To the point that real estate purchased with the personal property was to be deemed realty from the date of the purchase: Adam's Equity, 136, note; *Jones v. Caldwell*, 97 Pa. St. 45; *Evans v. Kingsberry*, 2 Rand. (Va.) 120; *Lucas v. Brandreth*, 28 Beav. 273.

For the defendants *Frederick M. Scott, Jr., Myrtice Scott, Fitzhugh Scott*, and *Edith Fuller*, there was a brief by *Finches, Lynde & Miller*, and oral argument by *Mr. William P. Lynde*. They argued, *inter alia*, that *Henry T. West, Jr.*, is entitled to no part of the net income until he arrives at the age of twenty-five, and to no part of the net income which has accrued prior to that time. *Irvin v. Ironmonger*, 2 Russ. & M. 531; 2 Redf. on Wills, 474. The will vests the entire property in the executors *as trustees* during the lives of the daughters or either of them. *Tobias v. Ketchum*, 32 N. Y. 327; *Van Steenwyck v. Washburn*, 59 Wis. 483; *White v. Parker*, 1 Bing. N. C. 573; 2 Wm. Saunders, 11, note; *Leggett v. Perkins*, 2 N. Y. 297. The accumulation of rents and profits which will necessarily result is not in violation of sec. 2062, R. S. That section only invalidates an express *direction* for an accumulation. *Elborne v. Goode*, 14 Sim. 173; *Williams v. Williams*, 8 N. Y. 538. If the accumulation is within that statute, then the rents and profits belong to the grandchildren as the persons presumptively entitled to the next eventual estate. R. S. sec. 2064; *Haxtun v. Corse*, 2 Barb. Ch. 518; *Robison v. Robison*, 5 Lans. 165; *Lang v. Ropke*, 5 Sandf. 363; *Tucker v. Tucker*, 5 N. Y. 408. See *Pray v. Hegeman*, 92 N. Y. 508; *Barbour v. De Forest*, 95 id. 13.

The following opinion was filed July 2, 1885:

CASSODAY, J. The testator had sufficient sagacity to accumulate a large fortune. He lacked the requisite sagacity

to secure competent legal aid in drawing a will which should embody an intelligent expression of his purposes and at the same time be free from legal complexity. The result of such failure is this suit to ascertain his intentions as expressed in his will and to determine whether any of its provisions were in violation of any rule of law. Possibly other suits may arise. Whether such failure was induced by economic considerations, or an innate conceit of the testator's capacity to draw his own will, is immaterial, since in either event the experiment is equally expensive and troublesome and may result in defeating some of the purposes cherished. It would be difficult to find a will with language unobscured and containing so few provisions, and yet involving so many intricate legal propositions. This does not result from any bungling or awkward use of the words employed, nor the usual confusion produced by a superfluity of language, nor repeated inconsistent and conflicting statements, but from a poverty of expression as to things touched upon, obviously growing out of the absence of the requisite knowledge of the law applicable to the dispositions intended, and hence a failure to mention some things which, seemingly, must have been in contemplation at the time.

In construing the different provisions of such a will, it seems to be especially necessary to first fully comprehend the scheme of the whole will, and the ultimate purpose or object sought to be secured in the making of it. To discover such purpose and object, upon the principles of law applicable, is the business of construction. Putting ourselves as far as possible in the place of the testator at the time of making the will, and reading the language employed in the light of the facts and circumstances then existing and apparently in his mind, we may be enabled to discover his real intentions, and the objects thereby sought to be attained.

Long prior to the making of the will he had been di-

vorced from his wife, and provisions had been made for her at that time. Eight years before the execution of the will, his oldest daughter had married, and, within a year after her marriage, died, leaving to him the little grandson, *Henry T. West, Jr.*, one of the defendants. His daughter *Mary* had been married less than three years, and was less than twenty-six years of age, but had two little children, the oldest of which was not yet two. His other daughter, *Kate*, was unmarried, and only a little more than seventeen years of age. The only changes after making the will and before the testator's death, was the birth of a son to *Mary*, and the marriage of *Kate*, and, after his death, the birth of a daughter to *Kate*. His two daughters, his grandchildren then living, and those thereafter to be born, and the legal issue of any deceased grandchild or grandchildren by way of representation, and a sister, were the sole objects of his bounty. The mere fact that the will referred to *Mary* as though she were still unmarried, and provided for her children in case she should "marry and have issue," did not indicate a purpose to exclude her two children then living. The clause was evidently copied by mistake from a former will drawn prior to her marriage. It is obvious from the whole tenor of the will that he intended to provide for all his grandchildren. Such intention is clearly manifested in the will, and is not to be frustrated by a false assumption or inference contained therein respecting *Mary's* marriage and her children. Like a false description, otherwise perfect, it may be rejected. *Thompson v. Jones*, 4 Wis. 106; *Mann v. Pearson*, 2 Johns. 37. The rule "universally recognized and acted on," said Lord CRANWORTH, in speaking of a provision in a will, is "that words are to be construed according to their plain, ordinary meaning, unless the context shows them to have been used in a different sense, or unless the rule, if acted on, would lead to some *manifest absurdity or incongruity*." *Thellusson v. Rendlesham*, 7 H.

L. Cas. 494. This was sanctioned in the recent case of *In re Northen's Estate (Salt v. Pym)*, L. R. 28 Ch. Div. 157. This rule authorizes the rejection of the false assumption or inference mentioned, for otherwise there would be a "manifest absurdity or incongruity" in these features of the will.

Of course, the rights of the parties under the will became vested immediately upon the death of the testator. *Newman v. Waterman, post*, p. 612; *Van Vechten v. Van Veghten*, 8 Paige, 104; *Banks v. Thornton*, 11 Hare, 176; *Bank of Hamilton v. Lessee of Dudley*, 2 Pet. 492; *Miller v. Miller*, 10 Met. 393; *Canfield v. Bostwick*, 21 Conn. 550; *Gold v. Judson*, 21 Conn. 616. To be effectual, however, in passing title, the statute required that it should be admitted to probate (sec. 2294, R. S.; *Newman v. Waterman, supra*); but, when so admitted, it related back to the death of the testator, and is to be treated as speaking from that moment.

The disposing parts of the will are all *in præsenti*, yet singularly the will passed the absolute and then present title to but a very small fraction of the property on hand at the time of the testator's death. The immediate dispositions are confined almost wholly to the income thereafter to accrue. By the third clause of the will the testator did give to his two daughters, jointly, the absolute title of all of his "household goods, furniture, books, pictures, plate, and ornaments." These were valued at $859.85. This seems to be the only property in being at the time to which title was absolutely disposed of *in præsenti* by the will. By the third clause he devised the homestead to the two daughters, "and to the survivor of them, *during their natural lives*, . . . free of taxes, expenses of repairs, and insurance." He appointed his daughters the executors of his will, with a request that they should not be required to give security. He ordered and directed his executors to pay all his just debts, including mortgages on his real estate,

if any, with as little delay as might be. By the seventh clause of the will he required his daughters to pay quarterly to his sister, Eveline Caswell, from the net income they should derive from his estate, a sum sufficient for her comfortable support, as ¡long as she should live. The court held this to be a charge upon the daughters personally, to be paid by them out of the shares of the net income of the testator's estate given to them by the first clause of the will. This is frankly conceded to be the true construction, and the language is too plain for any other.

It follows that, aside from the property given to the daughters jointly by the third clause of the will, as above mentioned, the only dispositions made by the will of any portion of the estate, during the lives of the daughters and each of them, is a certain fractional share of the *net income* of the estate to each of the daughters, and a certain other fractional share of such *net income* to each of the grandchildren,— including those which might thereafter be born,— during the natural life of such grandchild and such daughters, respectively. This leaves almost the entire *corpus* of the estate undisposed of so long as either of the two daughters shall live. Unless a large number of grandchildren shall hereafter be born, it will also leave undisposed of during the same period a very large share of the net income of the estate. The fourth clause of the will is to the effect that, after the death of the testator's daughters, he gave, devised, and bequeathed all the residue and remainder of his property, real and personal, to his *surviving* grandchildren, and to the *legal issue* of any deceased grandchild or grandchildren, by way of representation of such deceased grandchild or grandchildren, and to their heirs and assigns, forever, in equal parts. This obviously includes grandchildren born after the execution of the will, and also those born after the death of the testator, as well as those born before. It also includes the child or children of

any predeceased grandchild, although the oldest grandchild at the time of the making of the will was only seven years of age. But it only includes such of the grandchildren and such great-grandchildren of a predeceased grandchild, if any, as shall survive the death of both of the daughters.

The ultimate purpose of the testator is not so manifest in the giving as in the withholding. He provided a home for his daughters during their lives, respectively. In addition, he set apart such fractional shares of the net income of his estate as would in his judgment provide a comfortable support for his daughters and grandchildren during the lives of his daughters, respectively. But almost the entire *corpus* of the estate, and so much as might be left of the net income of his estate after satisfying the other provisions of the will, he tied up during the lives of his daughters, respectively, for his grandchildren, to be distributed to them as indicated, on the death of his daughters.

From what has been said, and the peculiar wording of the bequest to *Henry*, several very important and difficult questions of law are suggested, which will be considered in their order: In whom is and will be the title to the *corpus* of the estate (not mentioned in the third clause of the will) during the lives of the daughters? On the death of the testator did such *corpus* go to the executors to be held by them in trust as long as either of them should live, and then on their deaths to be distributed to the *survivors* mentioned in the fourth clause of the will? Or did it go under the statutes to the heirs at law of the testator? If to the heirs at law, then did it go to them absolutely as their own property, and thus render inoperative and entirely defeat the fourth clause of the will? Or did it go to them in trust, to be held until the death of both of the daughters, and then to be distributed to the survivors named in that clause of the will? Or did it go to the grandchildren living at the time

of the testator's death? And if it went either to such heirs or grandchildren, then did it go subject to being opened to let in such grandchildren as might be thereafter born during the life of either of the daughters, and to let out any heir or grandchild who might die during that period? Is there any difference in these respects between the personal and real estate? These questions go to the tenure of property, and are fundamental.

Of course, the legal title to personal property becomes vested in the executor on the probate of the will. *Melms v. Pfister*, 59 Wis. 192, and cases there cited. The office of an executor is in its nature a trust, in the discharge of which he acts as trustee. *Groton v. Ruggles*, 17 Me. 140; *Carson v. Carson*, 6 Allen, 399. The executor takes such title, therefore, subject to the trust and duties imposed by law, even where none have been specifically designated or declared in the will. Sec. 3785, R. S. Such duties and trusts are suggested by the bond required (sec. 3794, R. S.), when no exemption is made in the will. Sec. 3795, R. S. The executor is bound to make the proper returns, and render the proper account. Sec. 3794, R. S. He is bound to administer according to law, *and the will* of the testator, all his goods, chattels, rights, credits, and estate, and out of the same pay and discharge all debts, legacies, and charges properly chargeable thereon, or such dividends thereon as may be ordered and adjudged by the county court, and to perform all the orders and judgments of that court. *Ibid.* He may take the possession of real estate, receive the rents, issues, and profits, and keep the same in repair. Secs. 3822, 3823, R. S.

By the statutes, the time for paying debts and legacies, and to make a final settlement of the estate and of the accounts of the executor, may be extended, but not beyond six years from the time of granting letters testamentary. Sec. 3850, R. S. Such limitation is to secure a speedy set-

tlement of the estate, when it can be done according to the will. It is not designed, however, to frustrate, or render nugatory, any portion of the will. On the contrary, the estate is to be administered according to the will. Here, it is impossible to so administer and finally settle the estate within the time mentioned. The executors were expressly ordered and directed by the fifth clause of the will to pay the taxes on the homestead property, and on the household goods, furniture, pictures, books, plate, and ornaments bequeathed to the daughters, and to keep the same insured and in good repair without expense to the daughters or either of them, "*during the lives*" of the daughters; and in case of the destruction of the dwelling-house on the homestead by fire *during that time*, then to rebuild the same without expense to the daughters. They were, moreover, authorized, and, in effect, directed, by the sixth clause of the will, to prudently manage the estate in every respect; to keep the buildings and other improvements on real estate in good condition as to repairs; to purchase other real estate, or make improvements on his unimproved real estate, if in their opinion the interests of all parties concerned would be promoted thereby, and for that purpose they were expressly authorized to use any moneys that might come into their hands, not otherwise disposed of by the will. They were also, in effect, required by the first and second clauses of the will to figure out, and from time to time disburse for, or pay over to, the several parties therein named, the several fractional shares of the net income of the estate mentioned, so long as either of said daughters should live.

The will contains no express provision as to who shall have the title to any of the property, real or personal, during the lives of the daughters, respectively. But the trusts and duties thus imposed by the will are, necessarily, life-long in their duration. They cannot be terminated and

completed until the death of both of the daughters. *Ross v. Barclay*, 55 Am. Dec. 617. During their lives, as indicated above, almost the entire *corpus* of the estate, and probably a large share of the net income thereof, are to be tied up, and only to be distributed upon the death of both of the daughters. This being so, does not the will make the executors, and the survivor of them, trustees to hold the property, especially the personal estate, in trust for the benefit of those who are to take on their death under the fourth clause of the will? As to such personal property they took and are holding the legal title. Such holding, to some extent, at least, must continue during their lives. During the whole of that time they must prudently manage the estate in every respect. They must pay taxes and insurance. They must keep the real estate in good condition as to repairs. They must pay over or disburse certain fractional shares of the net income as indicated. They are expressly authorized to convert any moneys coming into their hands, and not otherwise disposed of by the will, into real estate, by purchasing other real estate, or by improving such as the testator owned at the time of his death. This could not properly be done even by a trustee, much less by a mere executor, without special authority. *Kaufman v. Crawford*, 9 Watts & S. 131; *S. C.* 42 Am. Dec. 323.

These things necessarily imply that the executors shall hold in trust the moneys with which to make such payments, disbursements, and purchases. Where no directions are given as to the manner in which the fund shall be invested, prior to its final appropriation in satisfaction of the trust, it is left to the discretion of the trustees. *Deaderick v. Cantrell*, 10 Yerg. 263; *S. C.* 31 Am. Dec. 576. A joint trustee of such discretionary trust is held to a more stringent liability for the acts of his co-trustee than in case of a directory trust in which the directions have been followed. *Ibid.* These principles are applicable to the personal prop-

erty left to the executors in trust under this will. The authority to convert personal property into real estate, by necessary implication includes the authority to take title to the lands thus purchased in their own names as executors in trust for the survivors described in the fourth clause of the will. This necessarily follows, since it is impossible to tell with certainty who such survivors will be until the death of the daughters. By the will, such survivors may include grandchildren or great-grandchildren not yet born, and hence cannot be confined to those in being on the testator's death, nor include those who may die during the lives of the daughters. It logically follows that the executors hold the legal title in trust, not only to the personal estate, but also to such of the real estate as has been or may hereafter be purchased with the proceeds of the personal property. It would seem that the real estate so purchased must be treated as real estate after it is so purchased. *Phelps' Ex'r v. Pond*, 23 N. Y. 69; *White v. Howard*, 46 N. Y. 144; *Dodge v. Williams*, 46 Wis. 97; *Hawley v. James*, 5 Paige, 318; *S. C.* 16 Wend. 61.

The question as to who took the title of the real estate of which the testator died seized, and who will hold the same while the daughters, or either of them, live, and until distributed under the fourth clause of the will, is more difficult to determine. Since the will expressly, or by necessary implication, imposes upon the executors such duties, and creates in them such trusts, but fails to specifically name them or any one as such trustees, or give, devise, or bequeath the property to them or any one in trust, we must hold it to be the duty of the executors, and the survivor of them, as such, to administer the estate according to the provisions of the will, notwithstanding the duties thus imposed include such as are usually performed by a trustee. This is the rule indicated by the authorities. *Saunderson v. Stearns*, 6 Mass. 37; *Dorr v. Wainright*, 13 Pick. 328; *Hol-*

*brook v. Harrington*, 16 Gray, 102; *Carson v. Carson*, 6 Allen, 397; *Groton v. Ruggles*, 17 Me. 137; *Howard v. Am. Peace Soc.* 49 Me. 306; *Pettingill v. Pettingill*, 60 Me. 423; *Nutter v. Vickery*, 64 Me. 490; *McArthur v. Scott*, 113 U. S. 340; *Mather v. Mather*, 103 Ill. 607; *Bradley v. Amidon*, 10 Paige, 235; *Craig v. Craig*, 3 Barb. Ch. 76, 94; *Brewster v. Striker*, 2 N. Y. 19; *Leggett v. Perkins*, 2 N. Y. 297; *Vail v. Vail*, 4 Paige, 317; *S. C.* 7 Barb. 226; *Tobias v. Ketchum*, 32 N. Y. 319; *White v. Parker*, 1 Bing. N. C. 573; *Barker v. Greenwood*, 4 Mees. & W. 421; *Silvester v. Wilson*, 2 Term R. 450; *Tenny v. Moody*, 3 Bing. 3; *Biscoe v. Perkins*, 1 Ves. & B. 485; *Van Steenwyck v. Washburn*, 59 Wis. 483.

The general import of this will seems to be equivalent to saying " that the residue of my property, both real and personal, shall remain as my estate as long as I have a living child;" as in *Mather v. Mather, supra.* In *Bradley v. Amidon, supra*, the simple management and control of the property for the time named, and the disbursements of the income, was held to create a valid trust. In *Craig v. Craig, supra*, there was no devise or bequest to the executors, as trustees of a certain share of the estate, but it was held from the whole will that a valid trust was created during the life of the daughter. The reason for this was given by the chancellor, thus: "For a devise of the rents and profits of land for life, without anything more, is but a different mode of expression to create a devise of the land itself during the same period. Here, however, the testator clearly shows that he intends that his daughter Gertrude shall receive the rents and profits of the real estate embraced in that share, as well as the income of the personal estate included therein, *through the medium of the executors.* The executors, therefore, take the legal title to her share of the real estate as trustees, by implication, to enable them to rent the premises, and receive the rents and profits thereof,

and pay them over to her, or apply them to her use." This was under statutes similar to ours.

In *Brewster v. Striker, supra*, the lands were devised to the grandchildren and their heirs forever, but the executors were required to rent the same, and pay the rents, issues, and profits to the grandchildren annually during their lives; and it was held that the executors, by implication, took the legal estate during the lives of the grandchildren. To the same effect are *Leggett v. Perkins, supra; Vail v. Vail, supra.* In *Tobias v. Ketchum, supra*, the will was, in effect, somewhat similar to this, and it was held that " where the executors are clothed with full power and authority to rent, lease, repair, and insure the estate during any period of time it shall remain unsold and undivided, they are vested with the legal title thereto." A devise of the care and management of land, and of the disposition of its income, during the life of the devisee, for the benefit of another, confers upon the devisee a life estate in trust. *Butterfield v. Haskins*, 33 Me. 392. In *Van Steenwyck v. Washburn, supra*, a clause in a will directing the executors to bear constantly in mind the wants of an insane widow, and to set aside, use, and expend whatever moneys might be necessary, consistently with her condition, to provide for her comfort and physical health, without limit for the purposes indicated, was held to create a personal trust in the executors, in addition to their powers and duties as such, which would continue during the life of the widow.

But the estate in fee will only be implied to the extent required to carry into execution the trusts imposed. *Upham v. Varney*, 15 N. H. 462; *Deering v. Adams*, 37 Me. 264; *Pearce v. Savage*, 45 Me. 98; *Ellis v. Fisher*, 3 Sneed, 231; *Morton v. Barrett*, 39 Am. Dec. 575; Hawk. Wills, 143–145. A general devise to executors in trust vests no estate in them except for such of the declared purposes as require that the title be vested in them. *Manice v. Manice*, 43 N.

Y. 303. The rule at common law, as well as by the statute, is that the trustee takes that quantity of interest only which the purposes of the trust require and the instrument creating it permits. *Nicoll v. Walworth*, 4 Denio, 388.

By our statute " every person who, by virtue of any grant, assignment, or devise, now is or hereafter shall be entitled to the possession of lands and the receipt of the rents and profits thereof, in law or in equity, shall be deemed to have a legal estate therein of the same quality and duration, and subject to the same conditions, as his beneficial interest." Sec. 2073, R. S. This merely changed what, but for the statutes, would have been an equitable interest in the use of the property, into a legal estate in the property itself of the same quality and duration. *Vander Volgen v. Yates*, 3 Barb. Ch. 243. Here each of the daughters had such beneficial interest through the medium of themselves, as executors, to the extent of three twenty-fourth parts of the net income of the entire estate, which, of course, includes the real estate. So each of the executors, as such, took a beneficial interest to the extent of the fractional shares of such net income which she took for her children. Such beneficial interests were life estates. *Reed v. Reed*, 9 Mass. 372; *Andrews v. Boyd*, 5 Me. 199; *Butterfield v. Haskins*, 33 Me. 392; *France's Estate*, 75 Pa. St. 220; *Estate of Schryer*, 2 Brewst. 526; Hawk. Wills, 140 *et seq*. But "no person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest." Sec. 2089, R. S.

As we construe this will, the executors were entitled to the possession of the real estate, and the rents, issues, and profits thereof, as well as the personal property. The statutes authorize the creation of such express trusts for the purpose of receiving and disbursing such rents and profits. Subd. 3, 4, sec. 2081, R. S.; *Leggett v. Perkins*, 2 N. Y. 297; *Haxtun v. Corse*, 2 Barb. Ch. 506. The power thus given

to executors or other trustees to receive the rents and profits is more effectual under the statutes to vest the estate in the trustees, than a devise of lands directly to such executors or other trustees, without such authority, but to be sold or mortgaged. Sec. 2082, R. S. Here the executors were also to have charge of and disburse the "net income" going to *Henry*, as well as to themselves, respectively, and to their children, which implies that they were to do all the things requisite to secure and obtain such net income. The will created a valid express trust, and, except as stated, vested the whole estate in the executors in trust as indicated, subject only to the execution of the trust. Sec. 2086, R. S. By the same section of the statute, the persons for whose benefit the trust was created took no estate or interest in the lands except as provided in the statutes, but they can enforce the performance of the trust. *Ibid.; De Wolf v. Lawson,* 61 Wis. 475. This did not, however, prevent the testator from declaring to whom the lands to which the trust related should belong on the failure or determination of the trust, *nor from granting or devising such lands subject to the execution of the trust.* Sec. 2087, R. S. Every such grantee has a legal estate in the lands as against all persons except the trustees and those lawfully claiming under them. Sec. 2087. When such trust is created, every estate and interest not embraced in the trust, and not otherwise disposed of, remains in or reverts to the person creating the trust, or his heirs, as a legal estate. Sec. 2088, R. S.

From what has been said it is manifest that, under the will, the executors and the survivor of them, as such trustees, must have the possession of the real estate during life, with the right to do everything necessary or convenient to carry into execution the duties and trusts imposed by the will. Such possession and rights constitute a legal estate which must continue during the lives of the daughters and the

survivor of them. But the will does not give them any express or implied power or authority to sell or dispose of any portion of the real estate. The quality and duration of their legal estate are necessarily limited and measured by their beneficial interests, their right to possession, and the duties and trusts imposed upon them by the will. Such possession, duties, and trusts must necessarily terminate with their deaths, and thereupon "all the residue and remainder" of the estate, not otherwise disposed of by the will, must, under and by virtue of the fourth clause of the will, go to the survivors designated therein, and to their heirs and assigns, forever, in equal parts.

Who are or will be the survivors thus designated in that clause of the will? Of course, they will include every grandchild who survives both of the daughters, whether such grandchild is now living, or may hereafter be born. As the daughters were the only surviving children of the testator, it is manifest that all his grandchildren must be born before the death of both of the daughters. But the class which is thus made the object of the testator's gifts, devises, and bequests is not limited to such "surviving grandchildren," but extends by way of representation "to the legal issue" of any predeceased grandchild or grandchildren. By that clause of the will, the testator, in effect, on the death of both his daughters, gave, devised, and bequeathed "all the residue and remainder" of his property, real and personal, to such of his grandchildren as should then be living, and to the legal issue of any predeceased grandchild, "and to their heirs and assigns, forever, in equal parts."

The complete vesting of the title and possession of such "residue and remainder" is, by the will, postponed until the death of both the executors, who hold possession for life, and hence every person answering to the description thus given at the time of the death of the last surviving daughter, are the persons entitled. *Gill v. Barrett*, 29

Beav. 372; *Wessenger v. Hunt,* 9 Rich. Eq. 459; *Knight v. Knight,* 3 Jones, Eq. 167; *McArthur v. Scott,* 113 U. S. 340; *Teed v. Morton,* 60 N. Y. 502. The question is presented, therefore, whether such residue and remainder is, during the lives of the daughters, vested or contingent. "Perhaps," said PARKER, C. J., "no question can arise in the course of legal inquiries more doubtful in its nature, or less referable to fixed and certain rules and principles, than whether the words of a devise or bequest constitute a vested or contingent remainder." *Shattuck v. Stedman,* 2 Pick. 469. A reference to some established rules, however, seems to be essential in order to appreciate the questions presented by this record. Where there is nothing to indicate the contrary, a bequest or devise to a class of persons takes effect in favor of those constituting the class at the time of the testator's death. *De Witte v. De Witte,* 11 Sim. 41; *Campbell v. Rawdon,* 18 N. Y. 412; *Petway v. Powell,* 2 Dev. & B. Eq. 308; *Loockerman v. McBlair,* 46 Am. Dec. 664; Hawk. Wills, 68–71, and cases there cited; *Packham v. Gregory,* 4 Hare, 396; *Shattuck v. Stedman,* 2 Pick. 469; *Emerson v. Cutler,* 14 Pick. 108; *Ferson v. Dodge,* 23 Pick. 287; *Pike v. Stephenson,* 99 Mass. 188; *Bowditch v. Andrew,* 8 Allen, 339; *Wight v. Shaw,* 5 Cush. 56; *Ross v. Drake,* 37 Pa. St. 373; *Tayloe v. Mosher,* 29 Md. 443; *Austin v. Bristol,* 40 Conn. 120.

"For many reasons," said Mr. Justice GRAY, in *McArthur v. Scott,* 113 U. S. 340, "not the least of which are that testators usually have in mind the actual enjoyment rather than the technical ownership of their property, and that sound policy as well as practical convenience require that titles should be vested at the earliest period, it has long been a settled rule of construction, in the courts of England and America, that estates, legal or equitable, given by will should always be regarded as vesting immediately, unless the testator has by very clear words manifested an inten-

tion that they should be contingent upon a future event."
Where the time of payment or distribution is merely post-
poned for the convenience of the fund or property, or to
let in others, the vesting will not be deferred until that
period. *Tayloe v. Mosher*, 29 Md. 444; 2 Williams on Ex-
ecutors (7th ed.), 1344 (1243). In such cases the question
is whether the time named is annexed to the payment or to
the gift itself. 2 Williams on Executors (7th ed.), 1325
(1224). "Where, in case of such a legacy, words of contin-
gency or condition are used, which may be construed as
applying either to the gift itself or to the time of payment,
courts are inclined to construe them as applying to the time
of payment, and to hold the gift as vested rather than
contingent." *Dale v. White*, 33 Conn. 294.

At the time of the testator's death he had four grand-
children living. As members of the class described, they
were, and are, prospectively entitled to share in the enjoy-
ment of the estate. Did the residue and remainder of the
estate, or any part of it, become vested in them on the tes-
tator's death? If so, did it open and let in the grandchild
born since the death of the testator? Will it open and let
in such other grandchildren as may hereafter be born? Will
it also open and let out any predeceased grandchild; and,
by way of substitution, open and let in any legal issue of
such predeceased grandchild? Unless the law will permit
such remainder or some portion of it to so open and let in
or out, as the case may be, no part of it can be regarded as
vested.

Some confusion has arisen in the use of the word "vested"
when applied to personal property. Mr. Hawkins says, in
effect, that originally the word had reference only to real
estate. It signified the acquisition of a portion of the actual
ownership. The fee simple being supposed to be carved out
into parts or divisions by the creation of particular estates,
a grant to any person of one of these portions of the fee,

vested him with, or vested in him, an estate in the land. Thus "vested" is nearly equivalent to "possessed." "All remainders, not vested, are in fact contingent." Page 221. The rules and expressions relative to the vesting of personal estate have been derived in great measure from the civil law. In that system legacies not immediately payable are divided into two classes: (1) Legacies payable at a future time certain to arrive, and which were transmissible to the representatives of the legatee if he died before the time of payment, and which are sometimes said to be vested; (2) conditional legacies, or legacies payable on an event which might never happen, and which were not so transmissible, and which are sometimes said to be contingent. Page 222. The only definition that can be given of the word "vested" in English law, as applied to future interests, other than remainders, is that it means, "not subject to a condition precedent." Page 223.

From these definitions it may be said with propriety that legacies payable at a future time certain to arrive, and not subject to a condition precedent, are vested. This is abundantly illustrated by the rules deduced from the authorities by the learned author last cited. Hawk. Wills, 226, 227, 232, 233, and cases there cited; and see 2 Jarm. Wills, 710, (5th Am. ed. from 4th London). On the other hand, legacies only payable on an event which may never happen, and hence subject to a condition precedent, are contingent. Hawk. Wills, 224. With these observations apparently in view, the learned author deduced from the authorities, as applicable to both real and personal property, this rule: "A devise or bequest of a corpus or aggregate fund to children as a class, where the gift is not immediate, vests in all the children in existence at the death of the testator, but so as to open and let in children subsequently coming into existence before the period of distribution." Hawk. Wills, 71, 72; and see, also, 2 Jarm. Wills, 707–710 (5th Am. from 4th

London ed.).    This is certainly the rule in this country as to real property.    *Carpenter v. Schermerhorn*, 2 Barb. Ch. 314; *Stevenson v. Lesley*, 70 N. Y. 512; *Dingley v. Dingley*, 5 Mass. 535; *Denny v. Allen*, 1 Pick. 147; *Annable v. Patch*, 3 Pick. 360; *Ballard v. Ballard*, 18 Pick. 41; *Weston v. Foster*, 7 Met. 297; *Minnig v. Batdorff*, 5 Pa. St. 503; *Rudebaugh v. Rudebaugh*, 72 Pa. St. 271; *Tayloe v. Mosher*, 29 Md. 443; *Barnum v. Barnum*, 42 Md. 254; *Hamletts v. Hamlett's Ex'r*, 12 Leigh, 350; *Cooper v. Hepburn*, 15 Grat. 551; *Turner v. Patterson*, 5 Dana, 292; *Monarque v. Monarque*, 8 Abb. N. C. 115.

In *Carpenter v. Schermerhorn, supra*, a testator devised to each of his six children an equal undivided sixth part of his real estate for life, and after the decease of each child devised the same to the children of such child and to their heirs and assigns, forever; and it was held that the devise in remainder was given to all the children of each child of the testator, as a class, and that each grandchild, the moment it came into existence, took a vested interest in the remainder in fee, subject to open and let in after-born children; and that such of them as died leaving issue transmitted that interest by descent to his or her issue, even in the life-time of the tenant for life, as a vested remainder in fee. In *Denny v. Allen, supra*, the testator gave the use and profits of his real and personal estate to his wife for life, and "after the death of his wife" devised and bequeathed the same to all the children of his brothers and sisters.    At the time of making the will and the testator's death there were living forty-seven nephews and nieces, of whom thirty-eight, *together with three others born after his death*, survived the wife; and it was held that the forty-seven took a vested remainder in the land, which opened to let in the three born thereafter, and that the personal estate belonged to the forty-one (including the three) who survived the wife.    In *Ballard v. Ballard, supra*, the testator gave to his sons, for

the term of ten years after his decease, the improvement and income of his farm, and "after the expiration of the ten years," gave and devised to his grandchildren the same farm, to have and to hold to them, their heirs and assigns, forever; and "it was held that this devise created a vested remainder in the grandchildren who were living at the decease of the testator, subject, however, to open and let in all those who might be born afterwards, whether born before or after the determination of the particular estate, and that the share of a grandchild who was living at the decease of the testator, but died before the expiration of the particular estate, descended to his father as his heir." To the same effect is *Weston v. Foster, supra.* The other cases cited are to the same import.

In the recent case of *McArthur v. Scott,* 113 U. S. 340, a testator devised lands and personal property to his executors, and their successors and their heirs, in trust, with directions too numerous and complicated to be stated here. Mr. Justice GRAY, in discussing the question of vested and contingent remainders, *inter alia,* said: "The more reasonable inference is that, upon the termination of the life estate by the death of all the children and grandchildren for whose benefit it was created, the great-grandchildren would be immediately entitled to the remainder. *Castle v. Eate,* 7 Beav. 296; *Manfield v. Duggard,* Gilb. Eq. 36; *S. C.* 1 Eq. Cas. Abr. 195, pl. 4. Upon that construction the contingency contemplated must necessarily happen at some time, either by the arrival of the youngest grandchild at twenty-one years of age, or by the death of all the grandchildren under age, and the case would come within the settled rule that when a remainder is so limited as to take effect in possession, if ever, immediately upon the determination of a particular estate, which estate is to determine by an event which must unavoidably happen by the afflux of time, the remainder vests in interest as soon as the remainder-man is

*in esse* and ascertained, provided nothing but his own death before the determination of the particular estate will prevent such remainder from vesting in possession. *Doe v. Considine*, 6 Wall. 458, 476; *Moore v. Lyons*, 25 Wend. 119, 144; *Blanchard v. Blanchard*, 1 Allen, 223, 227. . . . Words directing land to be conveyed to or divided among remainder-men after the termination of a particular estate, are always presumed, unless clearly controlled by other provisions of the will, to relate *to the beginning of enjoyment* by the remainder-men, and not to the vesting of the title in them. For instance, under a devise of an estate, legal or equitable, to the testator's children for life, and to be divided, upon or after their death, among his grandchildren in fee, the grandchildren living at the death of the testator take a vested remainder at once, subject to open and let in after-born grandchildren, although the number of grandchildren who will take, and consequently the proportional share of each, cannot of course be ascertained until the determination of the particular estate by the death of their parents. *Doe v. Considine*, 6 Wall. 458; *Cropley v. Cooper*, 19 Wall. 167; *Doe v. Provoost*, 4 Johns. 61; *Linton v. Laycock*, 33 Ohio St. 128; *Doe v. Perryn*, 3 Term R. 484; *Randoll v. Doe*, 5 Dow, 202. . . . The direction, that if any grandchild shall have died before the final division, leaving children, they shall take and receive *per stirpes* the share of the estate, both real and personal, which their parents would have been entitled to have and receive if then living, was evidently intended merely to provide for children of a deceased grandchild, and not to define the nature, as vested or contingent, of the previous general gift to the grandchildren; and its only effect upon that gift is to divest the share of any grandchild deceased, leaving issue, and to vest that share in such issue. *Smither v. Willock*, 9 Ves. Jr. 233; *Goodier v. Johnson*, L. R. 18 Ch. Div. 441; *Darling v.*

*Blanchard*, 109 Mass. 176." This language is peculiarly applicable to a similar provision in the fourth clause of this will.

From the authorities cited. it is obvious that the words "after the death of my said daughters," in the fourth clause of the will, at least as to the real estate of which the testator died seized, refer to the time when the grandchildren will come into the complete possession and enjoyment, and not to the time of the vesting of the remainder in fee in them. In other words, the clause, in effect, devised such real estate, directly upon the death of the testator, to the grandchildren, born or to be born, and to the legal issue of any predeceased grandchild, subject, of course, to the dispositions made in other portions of the will to the daughters, as executors in trust and otherwise, during their lives and the life of the survivor of them. It follows that the devise of the land to the grandchildren, etc., by that clause of the will, must be construed to convey to them all the estate of the testator therein which he could lawfully devise, except in so far as it appears by other portions of the will as above indicated that the devisor intended to convey a less estate. Sec. 2278, R. S.; *In re Estate of Pierce*, 56 Wis. 565; *Newman v. Waterman, post*, p. 612. Such devise is denominated by the statute as a future estate, because it is limited to commence in possession at a future day, on the determination of a precedent estate created at the same time and upon which it is dependent, and hence is termed a remainder. Secs. 2033–2035, R. S. And since, as we have seen, there were persons in being at the time of the testator's death who would have had an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate, it follows that the estate was a vested remainder. Of course, the remainder thus vested must open and let in after-born grandchildren, and the legal issue of any predeceased grand-

child, by way of representation; and is liable to be divested as to any grandchild dying without issue during the lives of the daughters.

So bequests of legacies and personal property, when the payment or distribution is to be made at a future time certain to arrive, and not subject to a condition precedent, are deemed vested when there is a person in being at the time of the testator's death, capable of taking when the time arrives, even though his interest is liable to be divested by dying without issue or diminished by future births. In such cases the legacy or bequest takes effect, in point of right, on the death of the testator. *Devisme v. Mello*, 1 Brown, Ch. 537; *Middleton v. Messenger*, 5 Ves. Jr. 136; *Hallifax v. Wilson*, 16 Ves. Jr. 168; *Cooke v. Bowen*, 4 Younge & C. (Exch.), 244; *Scott v. Earl of S.*, 1 Beav. 154; *Locker v. Bradley*, 5 Beav. 593; *Timins v. Stackhouse*, 27 Beav. 434; *M'Donald v. Bryce*, 2 Keen, 284; *Eyre v. Marsden*, 4 Mylne & C. 238; *Oppenheim v. Henry*, 10 Hare, 441; *Williams v. Clark*, 4 DeG. & S. 472; *Tucker v. Bishop*, 16 N. Y. 402; *Teed v. Morton*, 60 N. Y. 502; *Annable v. Patch*, 3 Pick. 360. See, also, Hawkins and Williams, as cited above; *Verrill v. Weymouth*, 68 Me. 318; *Brown v. Brown*, 44 N. H. 281; *Teele v. Hathaway*, 129 Mass. 164; *Dale v. White*, 33 Conn. 294; *Newberry v. Hinman*, 49 Conn. 130.

Thus, in *Cooke v. Bowen, supra*, the testator directed the residue of his personal estate, after the death of his wife, who was tenant for life, to be divided by giving to his five nephews and nieces named, two shares each, and to their children one share each. The nephews and nieces survived the testator; and it was held " that the *residue vested* in the nephews and nieces, and their children living at the testator's death, *or born in the life-time of the tenant for life.*" In *Scott v. Earl of S., supra*, the trustees were to stand possessed of the fund in trust for such of the testator's grandchildren then born, or who should thereafter be born

during the life-time of their respective parents, as should attain twenty-one years or marry with consent, whether born or unborn when any other of them attain the age or the time mentioned, and it was held that the grandchildren had vested interests in the fund, subject to be divested or diminished in the event of there being other grandchildren who should attain twenty-one or marry. In *Oppenheim v. Henry, supra,* a bequest of a residuary estate, to be invested and held by the executors in trust for all and every of the grandchildren of the testator, to be divided equally among them at the expiration of twenty years *after* his decease, was held to confer immediate, vested, and transmissible interests to the grandchildren living at the death of the testator, subject to be opened and let in grandchildren who might be born before the expiration of the twenty years. In *Tucker v. Bishop, supra,* it was held that each of the grandchildren living at the death of the testator took an immediate, vested interest in an equal share of the fund bequeathed to the children of his parent, subject to be diminished in quantity by the birth of subsequent children before the first child of the class became of age. To the same effect, *Dale v. White, supra.*

So, in *McArthur v. Scott,* 113 U. S. 340, it is held that "a direction that personal property shall be divided at the expiration of an estate for life, creates a vested interest;" citing in addition to two of the cases above, *In re Bennett's Trust,* 3 Kay & J. 280; *Strother v. Dutton,* 1 DeG. & J. 675. There are some things said in two of the early Massachusetts cases indicating that the rule in this respect, as to personal property, was different than as to real property. *Dingley v. Dingley,* 5 Mass. 535; *Emerson v. Cutler,* 14 Pick. 108. But such statements are repudiated in the more recent decisions in that state. *Winslow v. Goodwin,* 7 Met. 380, 381; *Wight v. Shaw,* 5 Cush. 60; *Bowditch v. Andrew,* 8 Allen, 342, 343.

By the word "vested" we do not mean that the grandchildren have the present title to the personal estate. On the contrary, as we have seen, that is vested in the executors, and will continue to be so vested during their lives and the life of the survivor of them. We simply mean that such legacies and bequests took effect, in point of right, in the grandchildren living, immediately upon the death of the testator, subject, of course, to their respective interests being divested by dying without issue or diminished in quantity by future births. In other words, each such grandchild became at once, on the death of the testator (or its subsequent birth), the owner of an equitable interest in a fractional share of the *corpus* of such personal estate; and such ownership must ultimately ripen into and become an absolute legal title, with the right to the immediate possession; and this can only be defeated or divested by the death of such grandchild, without issue, before the determination or execution of the trusts and rights given to and imposed upon the executors by the will. But such liability to defeat, as already indicated, did not prevent such equitable interest from becoming vested immediately upon the death of the testator. *McArthur v. Scott*, 113 U. S. 340. So the words "after the death of my said daughters," in the fourth clause of the will, as respects the personal property as well as the real estate, refers to such complete title and right to possession, and not to the time of vesting of the equitable interest in such property under that clause of the will. *Bullock v. Downes*, 9 H. L. Cas. 1.

What is to become of that portion of the net income of the estate which is undisposed of during the lives of the daughters? Must it be allowed to accumulate during their lives, and then upon their deaths be distributed as a portion of the residue of the estate under the fourth clause of the will? Or must it be distributed during their lives? If so, to whom, in what proportions, and when? As already ob-

served, at the time of the testator's death, he had but four grandchildren. Their fractional shares of the net income of the estate, together with the shares of the two daughters, only amounted in the aggregate to ten twenty-fourths, and in case *Henry* is not to be counted, then only nine twenty-fourths. One grandchild has since been born. But the question recurs, What is to become of the thirteen or fourteen twenty-fourths of the net income so remaining undisposed of? To absorb it all would require thirteen or fourteen additional grandchildren. As already indicated, the *corpus* of the estate was purposely withheld from distribution so long as either of the daughters may live. Not only this, but the distribution of the net income is limited to a small fraction. So small is this fraction that there is no probability of its ever being wholly absorbed, under the directions given in the will, during the life of either of the daughters. Knowing this, it must have been the purpose of the testator to allow such undisposed of net income to accumulate so long as either of the daughters should live, and thus swell the already large *corpus* with no other perceivable object than to stimulate in remote and unborn descendants an undue ancestral pride in the name of the giver.

The legality of such supposed accumulation is the question that confronts us. Several English cases were cited with elaboration upon the argument, upon the construction given to 39 and 40 George III. ch. 98, 18 Stats. at Large, 451. That act recited the expediency of restricting "dispositions of real or personal estates, whereby the profits and produce thereof are directed to be accumulated, and the beneficial enjoyment thereof is postponed;" and so far as the act may, by analogy, be regarded as applicable to the question here presented, was to the effect that no person should, by will, dispose of any real or personal property, so and in such manner that the rents, issues, profits, or produce thereof should be wholly or partially accumulated for

any longer term than twenty-one years from the death of the testator, or during the minority, or respective minorities, of any person or persons who should be living, or *in ventre sa mere*, at the time of the death of the testator; or during the minority, or respective minorities only, of any person or persons who, under the uses and trusts of the will directing such accumulations, would, for the time being, if of full age, be entitled unto the rents, issues, and profits, or the interest, dividends, or annual produce, so directed to be accumulated; and in every case where any accumulation should be directed otherwise than provided, such direction should be null and void, and the rents, produce, etc., so directed to be accumulated should, so long as the same should be directed to be accumulated contrary to the act, go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed. That act contained a proviso which, among other things, was to the effect that it should not extend to any provision for raising portions for any child or children of any devisor, or to any child or children of any person taking any interest under any such devise. According to Lord Chancellor CRAN-WORTH, this was one of the "most ill-drawn acts to be found" in the English statutes. *Tench v. Cheese*, 6 DeG., M. & G. 460.

Under this statute the English courts have held that although an accumulation be directed for a greater period than the term limited, yet that it is good for the twenty-one years, and void only as to the excess. *Griffiths v. Vere*, 9 Ves. Jr. 127; *Evans v. Hellier*, 5 Clark & F. 114; *Elborne v. Goode*, 14 Sim. 165; *Morgan v. Morgan*, 4 DeG. & S. 164; *Tench v. Cheese*, 6 DeG., M. & G. 453; *Mathews v. Keble*, L. R. 4 Eq. Cas. 467; *S. C.* L. R. 3 Ch. App. Cas. 691; 1 Jarm. Wills, 576 (303). So they have held that the unlawful accumulation, if arising from real estate, would go to the heir at law, and if from personal estate to the next of kin, and not

to the residuary devisee or legatee. *Griffiths v. Vere, supra; McDonald v. Bryce,* 2 Keen, 276; *Eyre v. Marsden,* 4 Mylne & C. 246; *Elborne v. Goode, supra; Mathews v. Keble, supra.*

In *Griffiths v. Vere,* 9 Ves. Jr. 127, Lord ELDON expressed the opinion, subsequently followed by other judges, that to render the accumulation unlawful the will must contain an express direction to accumulate for a longer period than the time limited, and that the act did not apply to such an accumulation as arose by simple operation of law. In the later case of *Tench v. Cheese,* 6 DeG., M. & G. 453, Lord Chancellor CRANWORTH repudiated the doctrine, and declared that " if a testator directs that to be done which, as a necessary consequence, leads to an indefinite accumulation, he must, within the meaning of the statute, be taken to have directed the accumulation." Lord Justice TURNER concurred in this view, while Lord Justice BRUCE was in doubt. This last enunciation may have some support in the later case of *Bective v. Hodgson,* 10 H. L. Cas. 656. In the still later case of *Mathews v. Keble, supra,* the Vice Chancellor indicated a preference for the *dictum* of Lord ELDON, but in the same case on appeal, the judges seem to have an impression that the *dictum* of Lord CRANWORTH was after all the better *dictum;* and, to our minds, it is based upon the better reason.

Our statutes on the subject are quite different, and of course the English cases are not controlling. Our statutes provide, in effect, that "an accumulation of rents and profits of real estate for the benefit of one or more persons may be directed by any will," but (1) "If such accumulation be directed *to commence on the creation* of the estate out of which the rents and profits are to arise, it *must* be made for the benefit of one or more *minors then in being,* and *terminate* at the expiration of *their minority.* (2) If such accumulation be directed to commence at any time *subsequent* to the creation of the estate out of which the

AUGUST TERM, 1885.     577

Scott and another, Ex'rs, etc. vs. West and others.

rents and profits are to arise, it *shall commence* within the time in [that] chapter permitted for the vesting of future estates and during the minority of the persons for whose benefit it is directed, and *shall terminate* at the expiration of such minority."     Sec. 2061, R. S.     "If, in either of the cases mentioned in [that] section, the direction for such accumulation shall be for a *longer time* than is therein prescribed, or than *during the minority* of the persons intended to be benefited thereby, it shall be void as to such *additional time*, and all directions for the accumulations of rents and profits of real estate, except such as are herein allowed, shall be void."     Sec. 2062.     "When such rents and profits are directed to be accumulated for the benefit of *infants entitled to the expectant estate*, and such infants shall be destitute of other means of support and education, the circuit court, upon the application of their guardian, may direct a suitable sum out of such rents and profits to be applied to their maintenance and education."     Sec. 2063.     "When, in consequence of a valid limitation of an expectant estate, there shall be a suspense of the power of alienation, or of the ownership, during the continuance of which the rents and profits shall be undisposed of, and no *valid direction* for their accumulation is given, such rents and profits shall belong to *the person presumptively* entitled to the *next eventual estate*."     Sec. 2064.     The death of the testator is deemed the time of the creation of an expectant estate created by devise. Sec. 2065.

These several provisions were copied almost literally from the statutes of New York, where they were in force as early as the revision of 1829 and since. See the revision of that year.     1 R. S. of N. Y. 726, §§ 37–40; 3 R. S. of N. Y. 1882, p. 2178, §§ 37–40.     Having taken these provisions from the statutes of New York, the constructions put upon them by the courts of that state are of peculiar significance and deserve our careful consideration.     Here, as we have

seen, the will contains no express direction to accumulate. During the lives of the daughters it only makes disposition of a very small fraction of the net income of the estate. The silence as to the balance of the net income during that time, and the disposition of " all the residue and remainder " of the estate on the death of the daughters, is, as we think, by necessary implication, a direction to accumulate such undisposed of portion of such net income. This is in accordance with the construction given to the sections by the New York courts. *Phelps' Ex'r v. Pond*, 23 N. Y. 80. As we have seen, it is also in harmony with the later English cases. In examining the New York cases we should not be misled in this respect by the decisions construing the statutes against an accumulation of the interest, income, or profits of personal property, where the language is "if such accumulation be directed to commence," etc., "such accumulation *must* be directed to be made," etc. 1 R. S. of N. Y. 1828, pp. 773, 774. We have no such statute against an accumulation from personal property, and hence the decisions in that state construing such statutes, are not applicable here, except in so far as the statutes quoted above are in that state made applicable to personal property.

It is here said to be impossible to bring the provisions for such accumulation within the terms of the statute. This is put on the ground that such accumulation is for the benefit of a class, and is not made to minors *eo nomine* as such, and that the minors for whose benefit it was made, were not all in being " on the creation of the estate" out of which the rents and profits were to arise.

In New York it has frequently been held that, to be valid, the accumulation must be solely for the benefit of minors, and cannot be legally made for the benefit of minors and adults together. *Hawley v. James*, 5 Paige, 318; *S. C.* 16 Wend. 61; *Boynton v. Hoyt*, 1 Denio, 54; *Kilpatrick v. Johnson*, 15 N. Y. 322; *Pray v. Hegeman*, 92 N. Y. 508.

Here the grandchildren were all minors at the time of the death of the testator. The oldest had not then quite reached the age of ten years. The accumulation directed was solely for the benefit of such minor grandchildren born or to be born. This should be qualified by saying that, after such accumulation may to some extent be secured and added to the *corpus* of the estate, the net income of the whole estate may perhaps be' thereby slightly increased, and consequently the three twenty-fourth parts of such net income thereafter to be paid to each of the daughters correspondingly increased. But this is not to be accumulated, and is only incidental, and arises by inference, and does not necessarily and absolutely follow, and is a circumstance which of itself should not render such accumulation void, if it is otherwise valid.

Must such accumulation be held to be wholly void merely because some of the minors for whose benefit it was made were not in being at the time of the death of the testator, when the estate was created out of which the rents and profits were to arise? One of the purposes sought to be secured by requiring the minors, for the benefit of whom the accumulation is directed, to be *in being* on the creation of the estate out of which the rents and profits are to arise, in case such accumulation is directed to *then commence*, seems to be the vesting of the ultimate right to such accumulation as soon as such estate is created and the accumulation commences. Subd. 1, sec. 2061, R. S. In case they commence at a subsequent period, then they must " commence within the time . . . permitted for the vesting of future estates, and during the minority of the persons for whose benefit it is directed." Subd. 2, sec. 2061. But whether such accumulation commences on the creation of the estate out of which the rents and profits are to arise, or at any time subsequent thereto, yet when it does commence the persons for whose benefit it is directed, must then be in

being and in their minority, and the same must terminate at the expiration of such minority. The time permitted for the vesting of future estates is limited to two lives in being at the creation of the estate. That is to say, future estates are only permitted to be contingent during such two lives in being at the time of the creation of the estate. Secs. 2037–2039, R. S.; *De Wolf v. Lawson*, 61 Wis. 473. During the lives of his two daughters, the testator was authorized to suspend the absolute ownership of his estate, both real and personal, and during that time render it inalienable. *Ibid.* So, during such suspension, he was authorized to dispose of the income annually as it accrues, but could direct its accumulation from the real estate only during the time and for the purpose prescribed in the statute. So, during the time, he was authorized to give vested legacies and provide for their payment at a future time certain to arrive. *Phelps' Ex'r v. Pond*, 23 N. Y. 81. Future estates are contingent while the person to whom they are limited to take effect remains uncertain. Sec. 2037, R. S. The accumulation here directed is a future estate, and one of the questions is whether it is to be deemed vested or contingent. The statute treats " such rents and profits " as " are directed to be accumulated for the benefit of infants *entitled to the expectant estate*," as vested in point of right immediately on the death of the testator; for it authorizes the court, under certain circumstances, to " direct a suitable sum out of such rents and profits to be applied to their maintenance and education." Sec. 2063, R. S. This could only be done on the theory that such infants are, in equity, the real owners. This construction has been given by the court of appeals to the corresponding section in New York. It is there said that the section treats such accumulation " as the property of the minor, the enjoyment of which has been postponed." *Pray v. Hegeman*, 92 N. Y. 516. According to that section, the question whether such rents

and profits are to be treated as vested or contingent, depends upon whether the infants, for whose benefit such accumulation is directed to be made, are "entitled to the expectant estate."

As we have already shown, the remainder in fee to the lands of which the testator died seized, vested immediately upon his death in the grandchildren living at the time, subject to open and let in after-born grandchildren, and the legal issue of any predeceased grandchild by way of representation, and to divest such grandchildren as may die without legal issue. So we have shown that bequests of legacies and personal property, when the payment or distribution is to be made at a future time certain to arrive, and not subject to condition precedent, are deemed vested when there is a person in being at the time of the testator's death capable of taking when the time arrives, even though his interest is liable to be defeated altogether by his own death, or to be diminished by future births. The mere fact that the use or fractional interest in the accumulation directed, which became vested in each grandchild living on the death of the testator, was liable to shift to the legal issue of any predeceased grandchild, or, in the absence of such legal issue, then to the surviving grandchildren, did not render so much of the direction as is confined to the minority of such grandchild while living invalid. *Harrison v. Harrison*, 36 N. Y. 543; *Gilman v. Reddington*, 24 N. Y. 9; *Monarque v. Monarque*, 8 Abb. N. C. 102. The fact that the right to such accumulation did vest in the grandchildren living at the death of the testator, subject to open and let in others as indicated, seems to be established not only by what has been said and the authorities cited, but others. See, also, *Everitt v. Everitt*, 29 N. Y. 40; *Lovett v. Gillender*, 35 N. Y. 617; *Manice v. Manice*, 43 N. Y. 305; *Knox v. Jones*, 47 N. Y. 390; *Embury v. Sheldon*, 68 N. Y. 227; *Stevenson v. Lesley*, 70 N. Y. 512. Some

things said in some of the New York cases may at first view appear to be inconsistent with some of the positions taken herein, but on examination it will be found that they either related to personal property, and are under a different statute, or the power of alienation was unlawfully suspended, or they were otherwise distinguishable, as in *Pray v. Hegeman,* 92 N. Y. 508, and *Barbour v. De Forest,* 95 N. Y. 13.

It follows that the infants living at the time of the death of the testator were entitled to the expectant estate, and hence became thereupon, and by virtue of the residuary bequests in the fourth clause of the will, the owners in point of right of such accumulation, subject, of course, to having the quantity of their interests therein diminished by future births. For instance, the grandchild born since the testator's death, immediately upon her birth became vested in point of right to her fractional share of such subsequent accumulation. The same will be true on the birth of any future grandchild. We therefore conclude that such accumulation is not wholly void merely because some of the infants for whose benefit it was made were not in existence until after the death of the testator. *Gilman v. Reddington,* 24 N. Y. 9; *Harrison v. Harrison,* 36 N. Y. 543; *Woodgate v. Fleet,* 64 N. Y. 566; *Stevenson v. Lesley,* 70 N. Y. 512. In *Manice v. Manice,* 43 N. Y. 305, it was expressly held that an accumulation out of the rents and profits of real estate for the benefit of an unborn child, to commence after his birth and terminate with his minority, was lawful if it commenced within the time permitted for the vesting of future estates.

The view we have taken renders it unnecessary to determine whether an accumulation for the benefit of minors, to whom only a contingent interest in the estate is given by the will, would be valid. In New York it has been held that contingent remainders and trusts for accumulation

were valid as to real estate, but void as to personal property. *Manice v. Manice, supra.* In that case it is held that "if the estate limited to the infant is contingent, an accumulation of the income during his minority cannot be said to be for his benefit." But that question is not here involved, because here, as we have shown, the future estate is vested in the infants.

The statute expressly declares that such accumulation must terminate at the expiration of the minority of the person for whose benefit it is directed. Sec. 2061, R. S. It goes further, and declares that if the direction for such accumulation is for a longer time than during the minority of the persons intended to be benefited thereby, then it shall be void as to such additional time. Sec. 2062. From these provisions we are authorized to infer, and must infer, that such accumulation is valid during such minority. Such is the conclusion of the New York courts. *Gilman v. Reddington,* 24 N. Y. 9; *Robison v. Robison,* 5 Lans. 165; *Simpson v. English,* 4 Thomp. & C. (N. Y. Sup. Ct.), 80. The same rule was maintained in the English cases cited.

But in case all of the grandchildren live until the youngest becomes of age, then, in the course of events, the oldest must become of age long prior to the youngest. Assuming that the daughters, or one of them, continue to live until the youngest grandchild becomes of age, then the question recurs, What becomes of the accumulation in the *interim?* Must the several shares of all the grandchildren be paid over when the oldest becomes of age? Or is the share of each grandchild to be paid over to him on his becoming of age, and so on?

Under the statute, the devises of the remainder in fee of the lands to the grandchildren by the fourth clause of the will, must be construed to create in them estates in common, and not in joint tenancy. Sec. 2068, R. S.; *Monarque v. Monarque,* 8 Abb. N. C. 102. The same seems to be true

of the bequests therein to them which cover and include the rents, issues, and profits.  Thus it has been held in New York that such bequests constituted the legatees tenants in common, and that they took distributively, and not jointly. *Everitt v. Everitt*, 29 N. Y. 39.  Such is the general rule. The fourth clause of the will gives the residue and remainder to the surviving grandchildren in severalty as tenants in common and not as joint tenants.  *Stevenson v. Lesley*, 70 N. Y. 512.  Under it, as we have seen, a fractional share of such an accumulation in point of right became vested in each grandchild living, immediately upon the death of the testator.  This being so, the fractional share of each grandchild to such accumulation must, if the statute will permit, be treated by itself, in considering whether the direction to accumulate is valid or void.  The statute seems to contemplate the same thing.  It provides, in effect, that when, in consequence of a valid limitation of an expectant estate, there is a suspense of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of "and no valid direction for their accumulation is given, such rents and profits shall belong to the *person presumptively entitled* to the next eventual estate."  Sec. 2064, R. S.  "That is the estate which is to take effect upon the happening of the event which terminates the accumulation.  Those who presumptively will be entitled to receive the rents and profits when the period of accumulation ends, are entitled to anticipate the event which is to terminate the accumulation, and to take at once the rents and profits which are undisposed of or unlawfully directed to be accumulated."  *Manice v. Manice*, 43 N. Y. 383.  It will be observed that this section does not refer to the " persons," " minors," or " infants " in the plural, as in the other sections, but to them distributively, as " the *person* presumptively entitled; " indicating that, as each minor becomes of age, he may take his dis-

tributive share, and allow such accumulation to go on as to the others. This view is strengthened by the section which declares that if such accumulation be for a longer time "than during the minority of the persons intended to be benefited thereby, it shall be *void as to such additional time.*" Sec. 2062. Being only void for the time such accumulation is directed *in excess* of the minority of the person to be benefited, it cannot have that effect as to the distributive shares of those who continue to be minors after the oldest grandchild becomes of age. It follows that when the oldest grandchild entitled to such fractional share of such accumulation becomes of age, then his share must be passed over to him, and from that time forward such oldest grandchild will take his share as it accrues, and the accumulation will thereafter continue only as to such as have not yet become of age, and so on from time to time as each of the others become of age. This view of the statutes has been sanctioned in New York. *Gilman v. Reddington*, 24 N. Y. 19; *Grant v. Grant*, 3 Redf. 290; *Schettler v. Smith*, 41 N. Y. 328; *Embury v. Sheldon*, 68 N. Y. 228. Thus, in *Gilman v. Reddington, supra*, it is said: " This direction is void so far as it includes *any period* of time beyond the minority of the children *respectively.*"

But what has been said in reference to illegal accumulations applies only to rents and profits of real estate, whether such as the testator owned at the time of his death, or such as have since been, or may hereafter be, purchased by the executors. Our statutes do not extend to accumulations from personal property. Notwithstanding the real and personal property is given by the same clause of the will and upon the same trusts, yet they are severable, and the validity of the one does not depend upon that of the other. *Knox v. Jones*, 47 N. Y. 389.

Of course, the peculiar wording of the bequest to *Henry* in the second clause of the will has no reference to the rents

and profits of the real estate undisposed of during the lives of the daughters. This being so, he is to share in them the same as the other grandchildren, and upon his becoming of age he is to receive his proportionate share of the amount then so accumulated, and annually as it accrues thereafter, and so on with the next oldest grandchild, from time to time, until they all become of age.

It is urged that by the peculiar wording of the second clause of the will the annuity therein given to *Henry* will not commence until " from and after the time when he shall attain the age of twenty-five years." In construing this clause it should be remembered that by virtue of the fourth clause of the will as construed, *Henry* and the other grandchildren living on the death of the testator, at once took a vested interest, either legal or equitable, in the entire estate, subject to the provisions of the will. We have also seen that each became vested in point of right to a fractional share of any accumulation arising from the estate. The words " after the death of my said daughters," in the fourth clause of the will, we have construed to relate solely to the time of enjoyment and complete possession and title. How are the similar words as to the annuity of *Henry*, in the second clause of the will, to be construed? It has been urged that an intention to discriminate against *Henry* and in favor of the other grandchildren must be inferred from the circumstance that *Henry* was to receive and had received $15,000 from a trust fund in the hands of his grandmother; but that provision was made long before *Henry* was born or his mother married, and was not made for *Henry*, but for his mother, in common, as we assume, with the testator's other daughters. *Henry* only got it by virtue of his mother's death. Had either of the other daughters died, leaving but one child, such child would, it is presumed, have inherited from its mother the same amount.

It does not appear to us that the circumstance of *Henry*

having received the amount named through his mother, should be regarded as evincing an intent to discriminate against him. The testator seems to have regarded *Henry* with friendship and affection, and expressed an intention of providing liberally for him. The language of the second clause is *in præsenti:* "I give and bequeath to my grandson *Henry T. West, Jr.,* . . . one twenty-fourth part of the net income of my estate *during* his natural life, so long as either of my said daughters shall live." Of course, on the death of both daughters he would come into the enjoyment and complete possession and title of his share of the entire estate. Hence the annuity was to continue "during his natural life," but terminate with the death of both daughters. If both daughters should die prior to his attaining twenty-five years of age, then, according to the construction sought to be given, the clause would be ineffectual for any purpose. In that event, the words "during his natural life" would be without any significance whatever. In that event, which is liable to occur at any time, *Henry* would get an equal share with the other grandchildren of the whole estate under the fourth clause of the will. This being so it would seem that, if the testator cherished a purpose to discriminate against *Henry* and in favor of the others, he would have manifested the same by some apt expression in that clause of the will. This he did not do. On the contrary, that clause is replete with expressions indicating that he intended they should all share alike. It is expressly given to the grandchildren "in equal parts." In the case of the other grandchildren, the bequest of net income was to his daughters, "*respectively,* for the use and benefit of each of their grandchildren, *during the natural lives of such children,* . . . so long as either of my said daughters shall live." The words here used to express the duration of such annuity to such grandchildren seem to be quite similar to the words quoted with respect to *Henry*. Of course, such

daughters were each the natural guardian of her own children. But *Henry's* mother was dead. His share of the net income, if any, was to be preserved by some one else until *Henry* reaches an age when he can with safety be intrusted with its possession and enjoyment. That time, in the mind of the testator, seems to have been fixed at twenty-five. If accumulated until that time, and then given into his possession and enjoyment, it would obviously be sufficient to then start him well in business. The principal purpose of the testator seems to have been to tie up his property and accumulate its income for the enjoyment of his grandchildren at some remote period. So we conclude that it is but an expression of the intention of the testator, and does no violence to the language employed, to hold that the words " from and after the time when he shall attain the age of twenty-five years," refer to the time when it was designed that he should come into the complete possession and enjoyment of such fractional share of such net income, and not to the time when it became vested in him in point of right. This construction is sustained by the reasons given and the authorities cited in another branch of this opinion. See, also, *Everitt v. Everitt*, 29 N. Y. 40; *Lovett v. Gillender*, 35 N. Y. 617; *Livingston v. Greene*, 52 N. Y. 118; *Embury v. Sheldon*, 68 N. Y. 236; and cases cited in the brief of counsel for *Henry*. Of course, such accumulation of *Henry's* share of the net income can only be lawfully continued during *Henry's* minority. When he becomes of age, then, whatever accumulation there may be of his share of the net income, directed by the second clause of the will, must be paid over to him, and thereafter annually, as it may accrue.

In so far as the conclusions of law of the trial court are not inconsistent with any portion of this opinion, they are to be regarded as approved. The costs and disbursements of all parties in this court are payable out of the estate. The

county court will make such allowance to the respective parties out of the estate for counsel fees, as, in the exercise of a sound discretion, may be just.

*By the Court.*— The judgment of the county court is reversed on both appeals, and the cause is remanded with directions to enter judgment in accordance with this opinion.

A motion for a rehearing was denied September 22, 1885; and the following opinion was thereafter filed:

CASSODAY, J.   In behalf of the plaintiffs a motion is made, ostensibly for a rehearing, but in reality to have the opinion filed made more definite and certain.   The failure of expression and lack of precision was entirely the fault of the writer, and was such as to justify the motion.   The only extenuating circumstance was an over-absorption in the weightier matters of the law involved therein.

1. By sanctioning the conclusions of law of the trial court, not inconsistent with any portion of the opinion filed, it is claimed that we sanctioned the conclusions that all expenses, disbursements, taxes, insurance, repairs, and the specific shares of the net income bequeathed, should " be paid and discharged exclusively with and out of the net income of the real estate of which the testator died seized, so far as such income will pay the same; and only in case the income of such real estate shall be insufficient therefor, and then only to the extent of such deficiency, ought any part of such expenses or disbursements be paid out of the income of the personal estate;  .  .  .  [that] the whole income of the personal estate,  .  .  .  or so much thereof as shall not be required to cover and pay such deficiency,  .  .  . should  .  .  .  be loaned out or invested from time to time,  .  .  .  and kept so loaned or invested," etc.

Neither this court nor the writer hereof had any intention of so exonerating the personal estate or the income

thereof, nor of so overburdening the real estate or the income thereof. We do not think there is anything in the opinion indicating such intention. On the contrary the opinion frequently speaks of "the net income of the estate" as a whole, and nowhere indicates any different treatment to be observed with respect to the net income of personal estate than of the net income of real estate, except that the latter should be kept by itself by reason of possible illegal accumulations therefrom. Besides, it is stated in the opinion that real estate purchased with personal estate must from the time of such purchase be treated as real estate. It was stated on the argument, as we understand, that the accumulated income of the estate exceeded $20,000, and that there were substantially no debts. This being so, and the directions of the will by way of accumulations and bequests being confined to the *net income of the estate*, it seemed to us that such net income could only be ascertained by taking what was left of the gross income of the whole estate each year, after paying all debts, expenses, disbursements, taxes, insurance, repairs, and any other special burden upon the estate. The express directions in the will were by necessary implication, as it seemed to us, a direction to pay all debts, expenses, disbursements, taxes, insurance, repairs, and any other special burden upon the estate, out of the gross income of the whole estate, and then to treat the balance at the end of any year as the "*net income*" for such year; and then out of such net income pay the specific legacies as directed, and the balance thereof accumulate as directed. Accordingly, the opinion states that "almost the entire *corpus* of the estate, and so much as might be left of the net income *of his estate after satisfying the other provisions* of the will, he tied up during the lives of his daughters, respectively, for his grandchildren, to be distributed to them as indicated on the death of his daughters." Had there been a large amount of debts, or but little

or no accumulations of income, so that it would have been necessary to appropriate a portion of the *corpus* of the estate to the payment of debts, expenses, disbursements, taxes, insurance, repairs, etc., then we would undoubtedly have directed such payments to be made from the personal estate in obedience to the well established rule of exoneration of the real estate; for, in such an event, it would have been impracticable to carry into effect the implied direction to pay the same from the gross income.

2. The learned counsel, in support of the motion, seems to think that the opinion filed is open to the construction that each of the several grandchildren born or to be born after the testator's death, became, or will become immediately upon his birth, entitled in point of right to an equal share with all the other grandchildren in all prior accumulations of rents and profits accruing after the date of the testator's death, and down to the time of his birth, as well as in all accumulations accruing subsequent to his birth, until he shall arrive at the age of twenty-one years, when he may claim payment of his share in full. Such was not the intention of the writer. To so construe the opinion would render a considerable portion of it superfluous, and certain portions very inconsistent, if not in direct conflict with other portions. This misapprehension may be partly in consequence of the opinion dealing mainly with the principles of law which were supposed to control the construction of the will, rather than the details of administration under the will when construed. But the opinion in this respect should be more definite and certain, and a few words and expressions modified. The opinion filed in effect states the rule that immediately upon the death of the testator the grandchildren then in existence took a vested interest to the remainder in fee of the real estate, and an equitable right to the residue of the personal estate, but so as to open and let in any grandchildren subsequently coming into ex-

istence before the period of distribution. It also indicates a similar rule as to accumulations of net income of the estate. So it appears from the opinion filed that the grandchildren took such vested rights distributively, as tenants in common, and not as joint tenants. It is moreover said that "the fractional share of each grandchild to such accumulation must, if the statute will permit, be treated by itself in considering whether the direction to accumulate is valid or void. The statute seems to contemplate the same thing."

Undoubtedly, the general scheme of the will as to the accumulations of net income, if it could be carried out, would require the equitable right to them to be regarded as vested in the grandchildren living at the death of the testator, subject to open and let in grandchildren born thereafter during the lives of the daughters on equal terms with the others, and then on the death of both of the daughters be distributed as a part of the residue and remainder of the estate under the fourth clause of the will, the same as in case of the *corpus* of the estate. But the statutes against accumulations have frustrated, and, to a certain extent, nullified, the scheme of the will in that respect. Hence the opinion filed, in effect, declared that as to the grandchildren in being at the time of the testator's death accumulations might commence at that time, but could only continue during their respective minorities; but as to any grandchildren thereafter born during the lives of the daughters, the accumulations could only commence after they were respectively born, and then only continue during their respective minorities. These things being so, and each grandchild taking a vested right distributively as tenants in common with the other grandchildren living at the time, and not as a joint tenant, it follows that the right of such after-born grandchild to accumulations is confined to such as accrue after his birth. Such after-born grandchild can have no right to prior accumulations, not because it is contrary to

the scheme of the will, but because it is forbidden by statute. The result is that at the birth of every grandchild after the death of the testator and during the lives of the daughters there must be an adjustment of such accumulations as have accrued up to that time; but the right to subsequent accumulations must then open so as to let in such after-born child. But the general scheme of the will is not frustrated by the statutes in any other respect.

3. As stated in the opinion filed: "The fourth clause of the will is to the effect that after the death of the testator's daughters he gave, devised, and bequeathed all the residue and remainder of his property, real and personal, to his surviving grandchildren, *and to the legal issue of any deceased grandchild* or grandchildren, *by way of representation of such deceased grandchild or grandchildren, and to their heirs and assigns, forever, in equal parts.*" "Any deceased grandchild or grandchildren," as here used, manifestly means such as may die during the life of one or both of the daughters. And "the legal issue of any" such "deceased grandchild or grandchildren" who may survive both of the daughters, as well as the "surviving grandchildren," are to share in "the residue and remainder" of the estate. In other words, "all the residue and remainder" of the estate, under that clause of the will, was, upon the death of the daughters, given, devised, and bequeathed by the testator, not to his "surviving grandchildren" alone, but to them " *and* to the legal issue of any deceased grandchild or grandchildren," etc. That is to say, the word "surviving," as there used, expressly includes, not only such of the "grandchildren" as survive both of the daughters, but also such of "the legal issue of any deceased grandchild or grandchildren" as survive both of the daughters. The word "surviving," or survivor or survivors, is often used in this broad, comprehensive sense as including "others," as well as a particular class. *Wilmot v. Wilmot,* 8 Ves. Jr. 10; *Cole*

*v. Sewell*, 2 H. L. Cas. 186; *Smith v. Osborne*, 6 H. L. Cas.
375; *Badger v. Gregory*, L. R. 8 Eq. Cas. 78; *Harris v.
Berry*, 7 Bush, 113; *Aiton v. Brooks*, 7 Sim. 204; *Hawkins
v. Hamerton*, 16 Sim. 410; *Eyre v. Marsden*, 4 Mylne & C.
231; *In re Arnold's Trusts*, L. R. 10 Eq. Cas. 252; *In re Pal-
mer's Settlement Trusts*, L. R. 19 Eq. Cas. 320; *Cross v.
Maltby*, L. R. 20 Eq. Cas. 378; *S. C.* 15 Eng. (Moak), 384.
The case is distinguishable from those where the word
"survivors" is applied to a particular class alone, in its
ordinary or perhaps strict sense. *Milsom v. Awdry*, 5 Ves.
Jr. 465; *Davidson v. Dallas*, 14 Ves. Jr. 576; *Re Corbett's
Trusts*, Johns. Eng. Ch. 591; *De Garagnol v. Liardet*, 32
Beav. 608; *Re Usticke*, 35 Beav. 338; *Benn v. Benn*, L. R.
29 Ch. Div. 839.

4. But as the "residue and remainder" of the estate is
not to be distributed until the death of both of the daugh-
ters, and then only to such grandchildren, and to such of the
legal issue of any deceased grandchild or grandchildren, *as
survive both of the daughters*, it is manifest that the share of
any grandchild who may die without legal issue during the
lives of the daughters must go into and become a part of
such residue and remainder, and then finally be distributed
to such survivors. . The same is true with respect to such of
the legal issue of any deceased grandchild as may die with-
out issue during the lives of the daughters. *Doe v. Waine-
wright*, 5 Term R. 427; *Crowder v. Stone*, 3 Russ. 217;
*Smith v. Osborne*, 6 H. L. Cas. 375; *Atkinson v. Barton*, 3
De Gex, F. & J. 339; *Atkinson v. Holtby*, 10 H. L. Cas. 313;
*In re Tharp's Estate*, 1 De Gex, J. & S. 453; *Hurry v. Mor-
gan*, L. R. 3 Eq. Cas. 152; *Badger v. Gregory*, L. R. 8 Eq. Cas.
78; *Harris v. Berry*, 7 Bush, 113; *Minot v. Taylor*, 129 Mass.
160; *Hawkins v. Hamerton*, 16 Sim. 416; *Eyre v. Marsden*, 4
Mylne & C. 231; *In re Arnold's Trusts*, L. R. 10 Eq. Cas. 252;
*In re Palmer's Settlement Trusts*, L. R. 19 Eq. 320; *Cross v.
Maltby*, 20 Eq. Cas. 378; *S. C.* 15 Eng. (Moak), 384.  Such

share of a grandchild dying during the lives of the daughters, or one of them, being given by the will expressly to such "surviving grandchildren, and to the legal issue of my deceased grandchild," etc., must take effect as a good cross-remainder. *Doe v. Wainewright*, 5 Term R. 427; *Cole v. Sewell*, 2 H. L. Cas. 186; *Atkinson v. Barton*, 3 De Gex, F. & J. 339; *Atkinson v. Holtby*, 10 H. L. Cas. 313; *Badger v. Gregory*, L. R. 8 Eq. Cas. 78.

5. Of course, there is a bare possibility that no grandchild, nor any legal issue of any deceased grandchild, will survive both of the daughters, in which event "the residue and remainder" could not go to survivors under the fourth clause of the will for want of a taker, and hence such "residue and remainder" would, in that contingency, necessarily go, under the statutes, to the testator's daughters as his heirs at law. But that mere possibility does not frustrate the scheme of the will. The statute expressly provides that "no future estate, otherwise valid, shall be void on the ground of the probability or improbability of the contingency on which it is limited to take effect." Sec. 2050, R. S. Whether it ever takes place or not can only be demonstrated by lapse of time.

6. As to whether any grandchild can dispose of his interest in the estate or any portion of it, prior to his coming into full enjoyment on the death of both of the daughters, that is a question which can only be properly considered when it shall arise.

7. As to the specific bequest to *Henry*, we have no desire to add anything to what is contained in the opinion on file.

*By the Court.*— The motion for a rehearing is denied.